LAWSON MANN, *et al.*, v. THE SECOND NATIONAL BANK OF SPRINGFIELD, OHIO.

1. CORPORATION, *Shown by Pleadings and Evidence.* Under the pleadings and evidence in this case, *held*, that it was sufficiently shown that the Second National Bank of Springfield, Ohio, was a corporation.

2. NOTE; *Indorsement; Transfer, Free from Infirmities; Notice.* Also, under the pleadings and evidence *held*, that the indorsement of the note sued on in this action was sufficient to cut off all outstanding and existing equities against the note of which the purchaser at the time of the purchase and indorsement did not have notice; and *further held*, that a negotiable note, executed in terms to "A. W., President," A. W. being the president of the Champion Machine Company, but intended to be executed to and to belong to the Champion Machine Company, and it did in fact belong to such company, and such note is afterward, but before maturity, sold to an innocent purchaser and indorsed by A. W. to such purchaser in the following words: "The Champion Machine Company, by A. W. president," such indorsement will transfer the note, freed from all equities or infirmities of which the purchaser had no notice.

3. INFIRM NOTE — *Constructive Notice to Corporation, not to Bank Buying.* A corporation should be held to have constructive notice of only such facts as have been brought to the actual notice or attention of some one of its officers or agents, or of such facts only as have been constructively brought to the notice or attention of some one of its officers or agents by the actual notice of such other facts as would naturally put the officer or agent upon inquiry; and therefore, *held*, where none of the officers or agents of a bank had any actual notice of any infirmity of a note purchased by the bank, but one of the directors who was also a member of the discount committee of the bank was the president and general manager of another corporation, one of whose agents, not the president and general manager, had actual notice of an infirmity of the note such as

would require this agent's own corporation to take constructive notice of such infirmity, the bank may nevertheless be considered as an innocent purchaser of the note without notice of any infirmity affecting it, notwithstanding the fact that the other corporation had constructive notice through its agent of such infirmity.

4. INDORSED NEGOTIABLE INSTRUMENT; *Possession; Presumption; Burden of Proof; Evidence.* The mere possession of a negotiable instrument, payable to order and properly indorsed, is *prima facie* evidence that the holder is the owner thereof, that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstance that would impeach its validity, and that he is entitled to recover upon it, its full face value, as against any of the antecedent parties; and where the maker of such an instrument, so indorsed and held, claims that the holder of the instrument is not a holder for value, it devolves upon the maker to prove the same. Mere evidence that at the time when such an instrument was discounted by a bank the bank merely gave credit for the amount of the instrument to the person selling the same, who had an account with the bank, without showing the state of the account at that or at any other time, will not of itself and alone prove that the bank was not a purchaser for value.

5. CONTENTS OF ACCOUNT BOOKS, *Incompetent Evidence to Prove.* It is not competent to prove the condition of a long account between a bank and one of its customers, and virtually the contents of the books of the bank, by the oral testimony of the cashier of the bank, where it is not shown that the cashier is the book-keeper, or that the books are kept under his supervision, or that he has any knowledge of such books.

*Error from Doniphan District Court.*

ACTION by *The Bank* against *Mann* and another, on a negotiable promissory note. Trial at the December Term, 1883, and verdict for plaintiff for $170.75. New trial denied, and judgment accordingly for plaintiff. The defendants bring the case to this court. The facts appear in *Mann v. National Bank*, 30 Kas. 412, *et seq.*, and in the subjoined opinion.

*W. D. Webb*, and *Thomas W. Heatley*, for plaintiffs in error.
*S. L. Ryan*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought originally before a justice of the peace of Doniphan county, by the Second National Bank of Springfield, Ohio, against Lawson

Mann and John D. Round, on a promissory note for $143, executed by Mann and Round to Amos Whitely, president, and indorsed and transferred to the bank.   After trial and judgment in the justice's court the case was appealed to the district court, where it was again tried and judgment rendered in favor of the plaintiff and against the defendants for the amount of the note with interest and costs; and to reverse this judgment, the defendants, as plaintiffs in error, brought the case to this court.   In this court the judgment of the court below was reversed, and the cause remanded for a new trial.  (*Mann v. National Bank*, 30 Kas. 412.)   After the return of the case to the district court, it was again tried, and judgment was again rendered in favor of the plaintiff and against the defendants for the amount of the note with interest and costs, and the defendants, as plaintiffs in error, again bring the case to this court for review.

The first point now presented by the plaintiffs in error, defendants below, is, that no proof was at any time introduced showing that the plaintiff below, defendant in error, was or is

1. Corporation, shown by pleadings and evidence.

a corporation.   Now probably it makes no difference whether any such proof was introduced, or not, but we think there was sufficient.   The plaintiff alleged in its pleadings that it was a corporation, and the defendants have never denied the same; they raised no question in the district court with regard to the necessity for proof upon this subject or the lack of proof, and have raised the question for the first time only, in the submission of their case to this court.   We think the proof upon this subject was sufficient. The evidence in the court below as well as the pleadings tended to show that the plaintiff was a corporation.   The evidence tended to show that the plaintiff was a national bank doing a banking business at Springfield, Ohio, with all the proper officers for that purpose, including a president, board of directors, cashier, discount committee, etc., and presumably it must be a national bank, for under the laws of congress no persons or combination of persons other than a national bank have any right to use any such name.  (U. S. Rev. Stat., § 5243.)

The plaintiffs in error, defendants below, further claim that there was no such indorsement or transfer of the note as would convey any interest in the note to the defendant in error, plaintiff below; and that even if there was, still that such indorsement or transfer was so irregular and informal that it would not cut off any outstanding equities existing in favor of the defendants below and against the original holders of the note. We shall assume that there were outstanding equities existing against the note, for the evidence tended to prove the same; or, to be more explicit, we shall assume that there was a failure or partial failure of the consideration for the note; and yet we think that this claim of the defendants below is not good. The plaintiff below, in its original bill of particulars, alleged among other things that the note sued on was made payable to the order of "Amos Whitely, president," and gave the full copy of the note, and further alleged "that said Amos Whitely indorsed and transferred said note for a valuable consideration before maturity to said plaintiff." The defendants did not by their answer or otherwise, deny any of these allegations, (and in this connection, see § 84 of the Justices Code;) but, on the contrary, they admitted in their answer the execution of the note and the alleged indorsement thereof, and alleged among other things as follows:

"That the note sued on in this action was given to the said Amos Whitely as president of the Champion Machine Company of Springfield, Ohio, which said company was then and now is a corporation duly organized and doing business under and by virtue of the laws of the state of Ohio, and that it was at the time it was so given by these defendants the property of and belonged to the said Champion Machine Company, and was not the property of the said Amos Whitely, and never has been his note or property, although taken in his name and made payable to his order."

The defendants also alleged in their answer that the note "was indorsed to the plaintiff as collateral security for the said Champion Machine Company to draw against at said bank." The case was tried in the court below upon the theory that the note originally belonged to the Champion Machine Com-

pany as alleged in the defendants' answer, and it was shown by the evidence to have been indorsed and transferred to the bank by the use of the following words, to wit: "The Champion Machine Company, by Amos Whitely, president." We think this indorsement transferred the note to the bank freed from all outstanding equities against it of which the bank did not have notice. The note on its face appeared to belong to "Amos Whitely, president." It belonged in fact to the Champion Machine Company. It was indorsed by the Champion Machine Company, and was also indorsed for such company by Amos Whitely, president. This we think was a sufficient indorsement both as against the company and Whitely to convey title, and we think it conveyed title free from equities. Any other ruling would be the sacrifice of substance to form. (*Pease v. Dwight,* 6 How. U. S. 190, 198.) See further upon this subject the decision in this case when it was formerly in this court. (*Mann v. National Bank,* 30 Kas. 412, 418.)

2. Indorsed note; transfer, free from infirmities; notice.

It is further claimed by the defendants below that the bank, at the time when the note was discounted and afterward, had constructive notice of the failure of the consideration of the note, and therefore that the bank did not obtain title to the note freed from the equities existing in favor of the makers thereof; and this is claimed for the following reasons: It is claimed that Amos Whitely had notice of such failure of consideration; that he was a director and a member of the discount committee of the bank; and therefore that the bank must also be held to have had such notice. In the argument by counsel for the defendants below no distinction seems to have been recognized with regard to the kind of notice which Whitely may have had, whether it was actual or constructive, or whether it was obtained in connection with the business of the bank or in some other manner. While it is true that Whitely was a director and a member of the discount committee of the bank, yet he had no actual notice of the failure of the consideration of the note, or of any other infirmity affecting the note; and neither had any other agent or officer of the

bank any such actual notice. The facts with regard to this subject are as follows: J. P. Quigley was the agent of the Champion Machine Company at St. Joseph, Missouri, where the note was executed, and had actual notice of the consideration for the note and of the alleged failure of such consideration. He transmitted the note to Whitely, at Springfield, Ohio, who was the president and general manager of the Champion Machine Company. Whitely afterward indorsed the note as aforesaid, and then Edward P. Christie, the cashier of the Champion Machine Company, took the note to the bank before due and sold it to the bank, J. G. Benallack, the cashier of the bank, acting at the time as the agent of the bank in the purchase of the note. Prior to that time Benallack had been instructed by the president of the bank to discount all paper presented by the Champion Machine Company for that purpose. The claim, then, of the defendants, in the light of the facts of the case, is as follows: J. P. Quigley, the agent of the Champion Machine Company at St. Joseph, Missouri, where the note was executed, had actual knowledge of the failure of the consideration of the note, and therefore Amos Whitely, the president and general manager of the company, who resided in Ohio, must also be held to have had sufficient notice, although he had no actual notice, but only constructive notice, and that as he had constructive notice as president and general manager of the Champion Machine Company, he must also be held to have had such notice in the capacity of director and member of the discount committee of the bank, and therefore that the bank itself must be considered as having had such notice. In other words, the bank must be held to have had constructive notice of the infirmity of the note, not because it or any of its officers or agents had actual notice thereof, or actual notice of any fact which might put them upon inquiry, but because one of its officers was a member of another corporation, which had an agent who had actual notice of such infirmity. We think this is carrying the doctrine of constructive notice too far. We think a corporation should be held to have constructive notice of only such facts as have been

*Infirm note; constructive notice to corporation — not to bank buying.*

brought to the actual notice or attention of some one of its officers or agents, or of such facts only as have been constructively brought to the notice or attention of some one of its officers or agents by the actual notice of such other facts as would naturally put the officer or agent upon inquiry. Why should a corporation be required to take notice of matters or things concerning which not one of its officers or agents has any actual notice? How could its officers or agents communicate to the corporation notice of matters or things of which they themselves have no actual notice? And how, in the present case, could Whitely have communicated to his bank the fact of the infirmity of the note in suit, when he did not possess the slightest actual knowledge or notice that such infirmity existed?

The defendants below further claim that the court below erred in excluding certain evidence tending to show that the plaintiff did not at any time pay any valuable consideration for the note, and has never given to the Champion Machine Company anything for the note other than a mere credit for the amount of the note. Preliminarily, we would state that the mere possession of a negotiable instrument, payable to order and properly indorsed, is *prima facie* evidence that the holder is the owner thereof; that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstance that would impeach its validity, and that he is entitled to recover upon it its full face value, as against any of the antecedent parties. (1 Daniel on Negotiable Instruments, § 812; *Ecton v. Harlan*, 20 Kas. 452; *Lyon v. Martin*, 31 id. 411; *Rahm v. Bridge Manufactory*, 16 id. 530.) Where a maker of such an instrument, so indorsed and held, claims that the holder of the instrument is not a holder for value, it devolves upon the maker to prove the same. We think no such evidence was introduced in this case, nothing that would overturn the *prima facie* case made out by the pleadings and evidence of the plaintiff, and nothing that would shift the burden of proof back from the defendants to the plaintiff. No fraud or illegality in the original incep-

4. Possession of indorsed negotiable instrument; *prima facie* evidence.

tion of the note was shown or claimed, nor anything that would defeat the plaintiff's action, except the aforesaid failure of consideration, together with the supposed notice to the bank, the supposed irregularity in the indorsement of the note, and the alleged failure on the part of the bank to pay value for the note. The principal facts concerning the note are as follows; Near the last of June, 1881, the defendants went to St. Joseph, Missouri, and purchased from James P. Quigley, the agent of the Champion Machine Company, a "Champion harvester and cord binder," and agreed to pay therefor the sum of $275, and the machine was immediately delivered to the defendants in Doniphan county, Kansas, where they resided. They tried the machine two days, and then gave two notes to the Champion Machine Company in payment for the machine, and took from the company a written warranty that the machine should do good work, etc. The defendants continued to operate the machine for about one week longer, and then went back to St. Joseph, Missouri, and executed the note sued on and one other note, in lieu of the two notes originally given by them to the Champion Machine Company. They further operated the machine, but before their harvesting was fully completed some part of the machine was broken, and they have never used it since. They retained the possession of the machine, however, and kept it on the farm of one of the defendants. After they gave the note sued on it was sent to Ohio, to Amos Whitely, as aforesaid, and on December 14, 1881, it was transferred to the plaintiff bank as aforesaid, and immediately afterward was sent by the bank to the State Savings Bank of St. Joseph, Missouri, for collection, and the Savings Bank immediately gave notice to the defendants. The note was to become due on January 1, 1882. The defendants then went to Quigley and demanded the note, and offered to return the machine, but he stated that he had nothing to do with the note, and that he did not want the machine. The defendants testified that prior to this time, and sometime in September, October, or November, they offered to return the machine to Quigley; but he testified that they never offered to re-

48—34 KAS.

turn the machine until the latter part of December, after the note had been transferred to the bank, and just before it became due. The note was of course valid at its inception, and the plaintiff may recover unless the evidence of the defendants, excluded by the court, was competent as tending to show that the plaintiff did not pay value for the note. The plaintiff, after making out a *prima facie* case in the court below, attempted to show affirmatively, and in fact by other evidence, that it had paid full value for the note, but the defendants objected to the evidence and the court excluded the same, upon the ground that it was an attempt to prove the contents of the books of the bank, or conclusions derived from such books, without producing the books themselves. The trial was had in Doniphan county, Kansas, and the books were in Springfield, Ohio, and of course could not be produced. After this, the defendants attempted to prove, by the same kind of evidence as that offered by the plaintiff, that the plaintiff did not pay value for the note, but gave only a credit to the Champion Machine Company therefor, and that the Champion Machine Company has never drawn out of the bank any portion of such credit. The court also excluded this evidence, and for the same reason that it excluded the

5. Account books; incompetent evidence to prove contents.

plaintiff's evidence. We think the evidence was properly excluded. This evidence of the defendants' was in the deposition of J. G. Benallack, who was at the time when the bank purchased the note the cashier of the bank. It was not shown that Benallack himself kept the books, or that they were kept under his direction or supervision, or that he knew that they were kept correctly, or, indeed, that he had any knowledge of them at all. Probably Benallack had but little knowledge of the books, as he was not the book-keeper, but a man by the name of Campbell was. If we should assume that the bank did not pay the value of the note at the time it was discounted, but simply gave a credit to the Champion Machine Company therefor, still there would be nothing to show whether at that time the bank owed the Champion Machine Company or the

machine company owed the bank.   The machine company, for anything that appears in the case, may have owed the bank more than $143 at the time the note was discounted, and if it did, the bank would have obtained the note unaffected by the equities existing between the antecedent parties, of which it had no notice, (*Draper v. Cowles*, 27 Kas. 484;) and the Champion Machine Company may have continued to owe the bank ever since.   The account between the Champion Machine Company and the bank seems to have been a very long one, and probably contained a vast number of items; and nothing appears in the record tending to show how this account stood at any time.   We think it is probable that the court might very properly have admitted some of the evidence, both of the plaintiff and the defendants, upon this subject, which it excluded; but still we do not think that the court committed any material error in excluding any of the evidence of the defendants which it did exclude.

We have carefully examined all the rulings of the court below referred to by counsel, and, not finding any material error in any of them, the judgment of the court below will be affirmed.

All the Justices concurring.