## H. M. BROOK v. M. TEAGUE *et al.*

1. ACTION ON NOTE—*Parol Evidence—Fraud.* Parol evidence is admissible as between the original parties to a negotiable note to show fraud, and so as to third parties with notice or without having paid value.

2. ——— *Burden of Proof.* If the maker of a negotiable note proves that there was fraud in the inception of the instrument, or if the circumstances raise a strong suspicion of fraud, the owner must then respond by showing that he acquired it *bona fide* for value, in the usual course of business, while current, and under circumstances which create no presumption that he knew the facts which impeach its validity.

3. INNOCENT PURCHASER, *When not.* When a purchaser of a negotiable note takes it under circumstances showing bad faith, or with knowledge that the maker has a defense to the same, the holder is not an innocent purchaser.

*Error from Bourbon District Court.*

ACTION on a promissory note by *Brook* against *Teague* and another. Trial at the December term, 1889, before Hon. W. J. BAWDEN, judge *pro tem.*, and a jury. Defendants had judgment, from which, and an order denying a new trial, plaintiff brings error. The material facts are set forth in the opinion.

*W. R. Biddle,* and *A. A. Harris & Son,* for plaintiff in error:

When a person buys a negotiable note before due, and it is indorsed in blank to him, he is presumed to be an innocent purchaser, and is entitled to recover, unless he had knowledge that it was obtained by fraud, or that it was without consideration. Mere suspicion, or circumstances that raise a mere suspicion, are not sufficient to put him on inquiry. *Mann v. National Bank,* 34 Kas. 746; *Mann v. National Bank,* 30 id. 412; Dan. Neg. Inst., § 812; *Ecton v. Harlan,* 20 Kas. 452; *Lyon v. Martin,* 31 id. 411; *Rahm v. Bridge Co.,* 16 id. 530.

In order to permit the defense alleged in the answer in this

case, the evidence should prove such circumstances of suspicion as to amount to bad faith on the part of the plaintiff. 1 Edw. Bills, §§ 449, 517; 1 Dan. Neg. Inst., § 721; 1 Pars. 258; Story, Prom. Notes, § 197; *Fox v. Bank of Kansas City,* 30 Kas. 441, and cases there cited.

The instructions given by the court were undoubtedly misleading to the jury. There was no proof that the note was obtained by fraud, or that it was without consideration, to the extent, at least, that the burden was shifted to the plaintiff to show that he paid value for the note and purchased it in good faith.

The court should have given the first instruction asked for by plaintiff, as the evidence fails entirely to show any defense to this note against the plaintiff.

Here was a negotiable note, given in ordinary commercial form, signed by man and wife, and a contract in writing taken for it. The contract is practically entirely carried out, and, so far as the record here shows, in entire good faith on both sides. The defendant claims he was not cured; but the contract does not stipulate for a cure; and while these parties were carrying out this contract in good faith, the note is sold. The plaintiff buys it in the ordinary course of business, and we fail to see any defense whatever in this record to this note.

*J. D. McCleverty,* for defendants in error:

The evidence shows that the plaintiff very well knew Eberle's practices and professions from personal experience, from reading his circulars, and his intimate association with him. The note, being obtained, was at once placed in the hands of plaintiff, so that he could claim to be an innocent holder. Of course, so long as Eberle was trying to "work" that neighborhood, he sent what he called medicine, but this he finally stopped. The fraud being shown, then it became the duty of the plaintiff, even in the absence of evidence, to show that he was a purchaser in good faith, in the usual course of business. *Giberson v. Jolley,* 22 N. E. Rep. 306; *Myers v. Bealer,* 46

N. W. Rep. 479.  The law tries to protect a man against fraud, and hence, if he has unfortunately been defrauded out of his note, it does not seem either unfair or unreasonable to require of a holder who demands payment that he show by affirmative proof that he is in fact a *bona fide* holder without notice.  If he shows this fairly (and a *bona fide* holder can always easily prove it), he is entitled to recover; otherwise, not.  *Joy v. Dieffendorf*, 28 N. E. Rep. 602; *Smith v. Lockwood*, 50 N. W. Rep. 400; *Burrough v. Ploof*, 41 id. 704.

Buying notes from an intimate acquaintance who is known to be engaged in obtaining notes by fraud, without inquiry, at a large discount, justifies a jury in finding the purchase was not *bona fide*.  *Schmueckle v. Waters*, 25 N. E. Rep. (Neb.) 281.

Buying notes from a stranger, upon a farmer residing near, and without inquiry, justifies the same inference, since, to buy in good faith, one must in good faith inform himself of the facts of the transaction.  *National Bank v. Dieffendorf*, 25 N. E. Rep. (N. Y.) 402.

Where notes obtained upon an agreement not to transfer them are transferred at a heavy discount, and testimony differs as to notice and good faith, it is a question for the jury. *Franc v. Dickinson*, 26 N. E. Rep. (N. Y.) 25.

A purchaser of a note who knows circumstances which might reasonably cause him to believe there was fraud will be charged with notice.  *Myers v. Bealer*, 46 N. W. Rep. (Neb.) 479.

Where one claiming to be a *bona fide* holder fails to tell the jury a fairly-convincing story, the court will not, upon a mere surmise, reverse and set aside their verdict; and certainly it cannot be said that there was not evidence tending to sustain every material fact necessary to the defenses to this note.  It being a mere question of fact, the verdict will not be set aside, even if the court should hold that it can consider a case where no judgment appears in the record.  Usually a straight, *bona fide* transaction can be made clear enough to secure a verdict; but if fraudulent notes can be enforced where

the evidence shows such strong facts and circumstances against the holder, then an inviting field has been found for such rascals as the record shows were the actors in this case.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by H. M. Brook against M. Teague and Sabina Teague, upon a promissory note for $225, dated May 17, 1888, due one year from date, executed by the defendants to Dr. H. A. Eberle, and which was alleged as indorsed for value to the plaintiff before maturity by Eberle. The defense was fraud in obtaining the note by the payee, and failure of consideration. The evidence tended to show that, before Brook obtained the note, Eberle's agent visited defendants' house, about May 1, 1888, and left some advertising circulars there; that Eberle came along on May 17; that he represented his institute — called by him the "medical and surgical health institute"— consisted of 10 or 11 physicians —"specialists;" that any patient would get the benefit of the services of all of them; that they owned the building in which they were located; that it was one of the most valuable in Kansas City, Mo.; that no one need fear to give a note, as they never transferred any paper, always holding it, so that, upon failure to cure, it could be returned; that no incurable cases were taken; that they worked on the "no cure, no pay" plan, and that no one would have to pay unless cured; that in case of failure their note would be returned; that these representations were relied upon, and were not found out to be untrue for some months; that the note was originally part of a larger piece of paper; that no cure had been effected or benefit derived; that the medical and surgical health institute occupied only two small rooms in the building they claimed to own; that Eberle had only two doctors helping him; and that they were not in good standing in their profession. After the defendants' evidence was all in, and they had rested their case, the plaintiff moved the court to strike out the evidence, and withdraw from the jury all statements made by the witnesses, including the defendant Teague,

in reference, first, to statements of Doctor Eberle, as to the number of physicians associated with him; second, the kind and character of buildings occupied by him, or the medical and surgical institute, at Kansas City, Mo.; third, that they held the notes executed to them and never indorsed or transferred them to anyone; fourth, all statements in reference to the contract, or what Doctor Eberle or the medical and surgical institute agreed to do, which were made before or at the time the written contract was made. The motion was overruled, and the court refused to take from the jury any portion of the testimony, to which the plaintiff excepted. The plaintiff then filed a demurrer to the evidence, which was overruled by the court, and excepted to by the plaintiff.

The rule is that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, but this rule is not infringed by the admission of parol evidence showing that the instrument is void between the original parties by reason of fraud. (1 Greenl. Ev., § 284.) Browne, in his new work on Parol Evidence, says: "Parol evidence is admissible as between the original parties to show fraud or duress, and so as to third parties with notice, or without having paid value." (Page 259, § 79.) At the time that the Teagues executed the note, Eberle delivered to them a written contract, signed by him for the medical and surgical health institute. It provided, among other things, that "the medicines, prescriptions, advice, etc., or surgical apparatus for 'course of treatment,' be furnished from time to time [to the Teagues] by the above institute, free of charge, according to the tenor of this contract (except express charges), until cured of the present disease or diseases." Between the original parties, the note and contract are to be taken together, and, if construed together, the note was not to be paid or to become due until the Teagues were cured. The evidence received and objected to did not contradict or vary the terms of the written contract, but the circulars and statements of Eberle

1. Action on note —parol evidence—fraud.

were representations concerning the standing of the medical and surgical institute, its staff of physicians, and its manner of collecting and returning notes received from patients. Most of these representations and statements were false. The institute, so-called, consisted only of Eberle and his two assistants. These false representations were properly received in evidence, as tending to establish the ]fraud committed by Eberle in obtaining a negotiable promissory note, which he intended to sell and dispose of as soon as possible to a third party, and which he did dispose of the day after he obtained it, notwithstanding his representations to the contrary, and his written agreement of "no cure, no pay."

The rulings of the trial court, in admitting the testimony and in overruling the demurrer to the evidence, must be sustained. After the introduction of all the evidence, the instructions of the court, and the argument of the counsel, the jury returned a verdict for the defendants. The motion for a new trial was overruled. This ruling is subject to review. (*Kennedy v. Taylor*, 20 Kas. 558; *Osborne v. Young*, 28 id. 774.) It is contended that there was no evidence tending to show that the plaintiff was not an innocent holder for value of the note sued on, but we think otherwise. If the note was obtained by fraud, it was equally unenforceable in the hands of Eberle or in the hands of one affected with notice of the fraud. The burden is on the holder of a negotiable note to show that he was a *bona fide* purchaser, where the maker in an action against him has shown that it was obtained by fraud. Daniel on Negotiable Instruments thus states the rule:

2. Burden of proof.

"The principle is well established, that if the maker or acceptor, who is primarily liable for payment of the instrument, or any party bound by the original consideration, proves that there was fraud or illegality in the inception of the instrument, or if the circumstances raise a strong suspicion of fraud or illegality, the owner must then respond by showing that he acquired it *bona fide* for value, in the usual course of business, while current, and under circumstances which create no presumption that he knew the facts which impeach its validity."

(Section 815, and cases cited; *Jordan v. Grover*, 33 Pac. Rep. [Cal.] 889.)

The evidence upon the part of defendants tended to show that in March or April before the note was signed Eberle had tried to sell some of the same kind of notes to plaintiff, who replied, "He would not buy such notes, because they were given for medical treatment; that there would be trouble over them; and that he would not give 25 cents on the dollar for them;" that Eberle had treated Brook on an agreement of "no cure, no pay" before May 17; that he knew his plan of doing business was "no cure, no pay;" that he had seen Eberle's circulars; that in September, afterward, he stated he held these notes as collateral; that "he knew that such men as Eberle were frauds;" that he stated on May 21 that, when he took notes from Eberle, he agreed to replace any he did not want; that in July, 1888, Brook stated that, when he took the Eberle notes, it was upon the agreement that, if there was a failure to cure in any case, such note was to be returned and another given him in its place, and that he was informed of this agreement at the time he took the notes. Brook did not attempt to show the actual amount he paid for the note sued on.

"The mere possession of a negotiable instrument, payable to order and properly indorsed, is *prima facie* evidence that the holder is the owner thereof; that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstance that would impeach its validity, and that he is entitled to recover upon it its full face value, as against any of the antecedent parties; and where the maker of such an instrument, so indorsed and held, claims that the holder of the instrument is not a holder for value, it devolves upon the maker to prove the same." (*Mann v. National Bank*, 34 Kas. 746; *Ecton v. Harlan*, 20 id. 452; *Lyon v. Martin*, 31 id. 411; *Rahm v. Bridge Co.*, 16 id. 530.)

But where the purchaser of a negotiable note takes it under circumstances showing bad faith, or with knowledge that the

3. Innocent purchaser, when not.

maker has a defense, the holder is not an innocent purchaser. (*Dobbins v. Oberman*, 17 Neb. 163; *Smith v. Lockwood*, 50 N. W. Rep. 400; *Burroughs v. Ploof*, 41 id. 704; *Schmuckle v. Walters*, 25 N. E. Rep. 281; *Bank v. Dieffendorf*, 25 id. 402; *Franc v. Dickinson*, 26 id. 250; *Myers v. Bealer*, 46 N. W. Rep. 479.) The rule also is, that when an action is brought upon a note by one not an innocent holder, the maker can urge the same defense that he could have made if the action had been brought by the payee. There was sufficient evidence introduced upon the trial to go to the jury that the plaintiff was not a *bona fide* purchaser.

We have examined the instructions, but, under the law as declared, we do not perceive any error prejudicial to the rights of the plaintiff. Under the evidence and findings of the jury, we have no inclination to disturb the order overruling the motion for a new trial.

The judgment will be affirmed.

All the Justices concurring.