THE WINFIELD NATIONAL BANK v. BETTIE McWILLIAMS.

(Filed Feb. 7, 1900.)

1. JURISDICTION OF PERSON—*Pleading to Merits Waives Same.* Where a defendant files a plea in the nature of a plea in abatement, which questions the jurisdiction of the court over the person of the defendant, and such defendant, without requesting or obtaining a ruling upon such plea, voluntarily obtains leave of court and files his answer to the merits of the case, the filing of such answer waives the special plea to jurisdiction, and amounts to a general appearance in the case for all purposes.

2. CHECK—*Endorsed in Blank—Collecting Bank Entitled to Proceeds, When.* Where a bank, in the due course of business, receives from a correspondent bank a check endorsed in blank, and in good faith parts with value or permits an existing indebtedness to remain unpaid by reason thereof, it is entitled to the proceeds of such check against the real owner, even though the check was not actually collected by such bank until after failure of the bank which transmitted the same to it.

3. HOLDER OF CHECK—*Endorsed in Blank—Presumption of Law—Burden of Proof.* The holder of a check endorsed in blank, in law, is presumed to be the legal owner for value, and that it was endorsed to him before maturity, and the burden is upon one claiming to be the owner of such check to establish that he is the real owner, and that although endorsed in blank, it was endorsed and deposited with a bank from which the holder received it, for

"collection" only, and that no consideration passed to him for the same. Once these facts are established, then it is incumbent upon the holder of the check to establish that he received it in good faith, for value or permitted an existing indebtedness to remain unpaid by reason of the check having been transferred to him.

4. JURY—*Special Interrogatories—Answers—Finding of Fact.* Where a party to a civil action submits special interrogatories to be answered by the jury, it is the duty of the jury to answer each interrogatory by a direct answer, and they should not be permitted to evade such answers by referring to instructions of the court, or to certain parts of the evidence, but their answers should be a finding of fact.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before B. T. Hainer, District Judge.*

*Pollock & Lafferty* and *Samuel D. Pryor,* for plaintiff in error.

*Charles J. Peckham* and *Ed L. Peckham,* for defendant in error.

Opinion of the court by

BURWELL, J.: On the 17th day of October, 1895, the defendant in error, Bettie McWilliams, was the owner and holder of a check on the Richmond National Bank, of Richmond, Kentucky, for the sum of $405, and on that date she took the check to the Farmers and Merchants Bank, of Blackwell, Oklahoma, and there deposited it for collection,—endorsed the check in blank, and thereupon the bank paid her the sum of $50 on account of this check, and issued her the following receipt:

"BLACKWELL, October 17, 1895.

"Received from Bettie McWilliams check on Richmond National Bank for $405 for collection.

"HOWARD PEABODY, Assistant Cashier."

The Farmers and Merchants Bank then endorsed the check in blank and forwarded it with other checks and drafts to the Winfield National bank, at Winfield, Kansas, "for collection and credit," which items amounted to $669.46, and were credited to the account of the Farmers and Merchants bank, subject to its check, on the 20th day of October, 1895.    The check in controversy was forwarded by the Winfield National bank direct to the bank upon which it was drawn, with instructions to remit to the correspondent of the Winfield National bank, in the City of New York, viz:    Hanover National bank, which was done.

On the 24th day of October, 1895, the Farmers and Merchants bank, being insolvent, made an assignment for the benefit of its creditors, and thereupon ceased doing business.

On the morning of the assignment, the Farmers and Merchants bank had to its credit with the Winfield National bank, subject to check or sight draft, the sum of $834.25.    After charging the Farmers and Merchants bank with an item of $600, balance due on note, and with checks and drafts of the Farmers and Merchants bank on the Wifield National bank, the credit of the Farmers and Merchants bank was reduced to $13.92, and on the morning of the 25th the account of the Farmers and Merchants bank with the Winfield National bank was overdrawn, by their checks which came in, to the amount of $10.08.

On October 28th, the defendant in error demanded of the    Farmers    and    Merchants    bank    the    proceeds of    the    collection    of    the    check    left    by    her    with

that bank, which demand was refused, and thereafter, on April 27, 1896, the defendant commenced her action in the probate court of Kay county against the Farmers and Merchants bank and the Winfield National bank, to recover the balace due her on the check which she had deposited with the Farmers and Merchants bank for collection. The defendant in error then caused an attachment to be issued from the probate court and levied upon certain promissory notes as belonging to the plaintiff in error, which were found in Kay county, and service was had upon the plaintiff in error by publication.

The plaintiff in error, the Winfield National bank, then entered a special appearance, and filed a plea to the jurisdiction of the probate court, which was overruled, to which ruling of the court the plaintiff in error excepted. The probate court of Kay county then entered judgment in favor of the plaintiff and against the defendants, the Winfield National bank and the Farmers and Merchants bank, from which judgment the Winfield National bank appealed to the district court of Kay county.

After perfecting its appeal to the district court, the Winfield National bank then filed its answer and moved to discharge the attachment which had theretofore been levied upon certain notes as the property of the Winfield National bank. This motion was overruled by the court, to which the defendant excepted. A trial was then had to a jury, which resulted in a judgment in favor of the plaintiff, Bettie McWilliams, and against the Winfield National bank, and the Farmers and Mer-

chants bank, of Blackwell; a motion for new trial was duly filed, and overruled by the court, and now the Winfield National bank brings the case here upon a petition in error, and case-made, and pray a reversal of the judgment of the district court.

The real question involved in this case is, shall the Winfield National bank or Blettie McWilliams bear the loss of the balance due defendant in error on the check? But before passing on that point, we will consider the effect of the appearance entered by the plaintiff in error in the probate and district court.

It is contended by the plaintiff in error that the probate court of Kay county had no jurisdiction of the person of the plaintiff in error, because it was a non-resident of the Territory, and no summons was served upon it. It is clear that no personal judgment could legally be rendered against the Winfield National bank by the probate court of Kay county, unless its appearance in that court amounted to a general appearance. As shown by the foregoing statement of facts, certain notes were seized by attachment as the property of the Winfield National bank. The only pleading filed, or only appearance entered by the Winfield National bank, in the probate court, was the filing of what plaintiff in error designated as a plea to the jurisdiction of the court. This was a pleading in which it was alleged that the notes attached in the action had been the subject of a certain action in the district court of Cowley county, Kansas, and that the defendant, Winfield National bank, had been directed by the court to deliver these notes into court, after a sufficient amount was

collected by the bank to satisfy a lien it held on them, to pay a judgment rendered against the owner of the notes.

This pleading was evidently intended as a plea in abatement, and the prayer was for the dismissal of the action. As to whether the filing of this pleading amounted to a general appearance, is a question on which the authorities are not uniform, but so far as this case is concerned it is immaterial, for the reason that the Winfield National bank, after judgment was rendered against it in the probate court, appealed to the district court and, after obtaining leave of court, filed an answer which contained a general denial, followed by several special defenses. But the plaintiff in error insists that it did not waive any rights it had under its special plea, by pleading to the merits.

With this contention we cannot agree. If the plaintiff in error relied upon the special plea to the jurisdiction of the probate court, it should have presented it to the district court, and given it an opportunity to pass upon that question. This, so far as the record shows, was not done; and when the plaintiff, without presenting and obtaining a ruling on its special plea, voluntarily obtained leave of court and filed its answer, and entered upon the trial of the merits of the case, it waived all rights, if any it had, under its special plea.

It is next contended by plaintiff in error that instruction number 4, given by the court, is erroneous. The instruction is as follows:

"You are instructed that when a bank, in the usual course of business, receives for collection a check drawn

upon a bank located at a place other than the place of business of the receiving bank, such receiving bank thereby becomes the agent for collection of the persons from whom such check is received, and acquires no general ownership of such check, or the proceeds of the collection thereof."

This instruction was equivalent to advising the jury that when the Farmers and Merchants bank, of Blackwell, in the usual course of business, received for collection the check drawn upon the Richmond National bank, of Richmond, Kentucky, and forwarded it to the Winfield National bank, of Winfield, Kansas, that the Winfield National bank thereby became the agent, for collection, of Bettie McWilliams, and that it acquired no general ownership of such check, or the proceeds of the collection thereof.

This instruction, under the facts in this case, was not a correct statement of the law, as will be shown by the great weight of authority.

In volume 3, of the American & English Encyclopaedia of Law, (2nd edition,) page 818, is is said:

"The rule generally adopted is, that where the collecting bank has no notice that the remitting bank is not the owner of the paper remitted, and on the credit of such remittances made or anticipated in the usual course of business between them, balances are, from time to time, suffered to remain in favor of the remitting bank, to be met by the proceeds of such paper, then the collecting bank is entitled, even as against the real owner, to retain the proceeds of such paper for a balance of account due it by the remitting bank."

In the case of *Ayers v. Farmers & Merchants Bank*, 79 Missouri, 421; also 49 Amer. Rep. 235, it is said:

"The plaintiff deposited with the Maston bank a check drawn by a third person, for collection and credit to his account. In accordance with the arrangement between the parties, the Maston bank gave the plaintiff immediate credit for the check, and the plaintiff immediately drew against it. The Maston bank sent the check to defendant, its corresponding bank, who charged it to the drawer, and credited the Maston bank. The latter, meantime, had failed and made an assignment, but the defendant did not know it. *Held*, that the plaintiff could not recover on the check from the defendant."

The case of *Vicery v. State Sarings Association*, 21 Fed. Rep. 773, is also in point. Mr. Justice Brewer, in this case, used the following language:

"Where a negotiable instrument, endorsed and delivered in blank to a bank, though in fact only for collection, is sent by it to another bank, 'for collection and credit,' before maturity, and the latter receives it without notice that it does not belong to the former, it may lawfully retain the proceeds of the collection to satisfy a claim for a general balance against the other bank, if that balance has been allowed to arise and remain on the faith of receiving payments from such collections pursuant to a usage between the two banks."

In that case it is further said:

"So far as any hardship on the plaintiff is concerned, he has no one but himself to blame. He chose to give an unrestricted endorsement, and thus permitted it to pass into the channels of trade as apparently the property of the Indiana Bank. He trusted that bank, and must abide the consequences of his confidence. That the endorsement to the defendant was for collection is immaterial. The question in this case is not whether title is apparently transferred to the collecting bank but whether it has a right to treat the transmitting bank

as the owner.  It had such right in this case, and therefore judgment will be entered in favor of defendant."

And again, in *Franklin County National Bank v. Beale, Receiver*, 49 Fed. Rep., p. 608:

"Plaintiff and defendant banks for several years had acted as agents for each other in the collection of checks, notes, and drafts, the practice being for each to credit the other for checks when received, and for drafts and notes when advised of their payment.  When a check was returned unpaid, after being credited, the amount thereof was charged back again.    The amounts thus collected were mingled with the general funds of the bank.   Plaintiff sent defendant a note for 'collection and credit,' which, on maturity, was paid by a check, and credit was immediately given on the books.  But defendant failed, and the check passed into the hands of the receiver.   *Held*, that, in view of the course of dealing, the two banks stood in the relation of debtor and creditor with respect to the amount of the check, and it became a part of the assets of the bank."

To the same effect is *Anheuser Busch Brewing Co. v. Clayton*, 56 Fed. Rep. p. 759.

The supreme court of the  United States has passed upon this same question a number of times.   In the case of *Bank of Metropolis v. The New England Bank*, 1 Howard, p. 234, it is said:

"If negotiable paper, not at maturity, be endorsed and delivered to a bank merely for collection, and be sent by such bank to another bank for collection, without notice that it does not belong to the former, the latter may retain the paper and its proceeds to satisfy a claim for a general balance against the former, if that balance has been allowed to arise and remain on the faith of receiving payment from such collections, pursuant to a usage between the two banks."

This case came before the supreme court of the United States a second time and was reaffirmed in 6th Howard, 212.

To the same effect is the case of *Wyman v. Colorado National Bank*, 5 Colo. 30; 40 American Rep. p. 133; and *Carroll v. Exchange Bank*, 30 West Virginia, 518; 8 American Dec. 101.

Many other authorities could be cited which are in harmony with the rule as enunciated by the above authorities, but the rule is so well settled that we deem further reference to precedents unnecessary. It is true that there are a few courts which hold that each bank through which a check, note, or draft deposited for collection, even though it be indorsed in blank, acts as the agent of the real owner of the check and in no event acquires a lien on it for a balance due from the bank from which it was received, unless the collecting bank part with a present consideration in good faith; but the weight and better authority in the other way.

In this case, as shown by the record, the Farmers and Merchants bank remitted its collections to the Winfie'd National bank, and then it would make checks and drafts on the Winfield bank for balances, from time to time. The check in controversy was transmitted by the Farmers and Merchants bank to the Winfield National bank for "collection and credit." There was nothing on the check to indicate that the Farmers and Merchants bank was not the real owner. The defendant in error endorsed the check in blank and delivered it to the Farmers and Merchants bank, who sent it to the plaintiff in error, with the express direction to "collect and credit."

The defendant in error could have written over her name, "For Collection," which would have advised every one through whose hands it passed that the check was her property. This she negligently failed to do, and it is only just that she bear the loss occassioned by her own carelessness. The Winfield National bank had no knowledge that the defendant claimed any interest in the check until after the Farmers and Merchants bank had failed, and the proceeds of the check had been applied.

On the strength of this check and other collections, the plaintiff in error paid out funds from day to day on checks and drafts of the Farmers and Merchants bank. It had on deposit to its credit with the Winfield National bank on October 19, 1895, $1,342.58, and the check in controversy entered into that balance. Prior to the morning of October 24, this balance had been reduced to $834.25, and at the close of the day's business it only amounted to $13.92, and on the morning of the 25th this small balance was wiped out, and a balance of $10.08 in favor of the Winfield National bank was caused by the receipt of checks on that morning. All of these transactions took place without any knowledge on the part of plaintiff in error that Bettie McWilliams claimed any interest in the check.

We think that it is clear that the plaintiff in error paid out money and permitted balances due it from the Farmers and Merchants bank to stand partly on the strength of the check in controversy, and therefore should be protected.

But it is insisted that the check was not collected by the Winfield National bank until the 25th of October,

1895, which was after the Farmers and Merchants bank had made an assignment; and that inasmuch as the check was not collected at that time, it was the property of the defendant in error, and she was entitled to the particular proceeds of the same. There are authorities which apparently sustain this contention, and these we will here briefly notice.

The case of *National Butchers and Drovers' Bank v. Hubbell*, 17 N. Y. 384, from a casual reading, would seem to support this view, but when carefully considered must be placed on the side of the authorities heretofore referred to in this opinion.

In that case Wilkinson & Co. was a private banking firm at Syracuse, N. Y. The plaintiff was a banking corporation in the City of New York. The plaintiff sent to Wilkinson & Co., checks and drafts endorsed as follows: "Pay Wilkinson & Co., or order, for collection for account of National Butchers and Drovers bank of the City of New York. W. H. Chase, Cashier." Wilkinson & Co. failed and made an assignment before all of the checks and drafts were collected, making Charles E. Hubbel assignee, and the court there held that all of the checks which were not collected by Wilkinson & Co. before the assignment, continued to be the property of the plaintiff. But this decision was based upon the ground that the checks were endorsed "For Collection," and the learned justice who wrote this opinion distinguishes it from the case of *Clark v. Merchants Bank*, 2nd N. Y. 380, and says that, in the case just referred to, the endorsement was in blank, and then quotes as follows from the body of the opinion: "The whole arrangement was one of mutual convenience, and to hold

that such drafts were transmitted for collection merely, with no right to a credit, or to draw against them until they were actually paid, is to lose sight of the situation of these brokers, their business and their necessities."

In *Sweeney et al. v. Easter*, 1 Wall. (U. S.) 166, the endorsement was as follows: "Pay Sweeney R. F. & Co., for collection. Sam Harris & Sons."

*Blaine v. Bourne*, 11 R. I. 119, is to the same effect. Except that the court further held that an endorsement, "Pay Jay Cook & Co., or order, on account of Baline, Gould & Short, North East, Pa., Alfred A. Short, Cashier," was a special and not a general endorsement, and that it was sufficient to give notice that Baline, Gould & Short retained the property in the bill.

*Millikin v. Shapleigh*, 36 Mo. 596; 88 Am. Dec. 171, merely follows the well established rule, that an endorsement "for collection" gives notice that the endorser is the owner of the bill.

In *The First National Bank v. Davis*, 114 N. C. 343; 41 Am. St. Repts. 795, Burwell, J., speaking for the court, says: "The relation between a bank transmitting paper for collection and the bank receiving and collecting such paper and mingling its proceds with its other funds, is that of debtor and creditor merely, and the creditor bank has no lien upon or for moneys collected, and no preference over the other creditors of the receiving bank,"

In the case of *City of Summerville v. Beal, Receiver*, 49 Fed. Rep. 790, the city treasurer deposited certain checks with the Maverick National bank at a quarter of 3, on Saturday, and credit was immediately given the

depositor in his little bank book; the bank closed at 3 and was declared insolvent. On this state of facts the court held that the title to the checks passed to the bank, and that the deposit of the checks and the giving of credit therefor in the bank books created the relation of debtor and creditor; but decided in favor of the city, on the ground of fraud. However, when the case reached the circuit court of appeals, 50 Fed. Rep. 647, that court held that no title passed to the bank except as bailee. This case was very ably considered by Judge Putnam, who wrote the opinion, but the rights of a third party had not intervened, and it was a question between the two original parties, and the rights of an innocent indorsee were not considered. Therefore the facts in that case were not the same as in the case at bar.

The case of *Commercial Bank of Pennsylvania v. Armstrong*, 148 U. S: 50, has an important bearing on the case under consideration. The Commercial National bank of Pennsylvania contracted with the Fidelity National bank of Cincinnati, Ohio, to collect for it at par from all points west of Pennsylvania, and the checks and drafts were stamped "Pay to the Fidelity National bank, or order, for collection for the Commercial National bank of Pennsylvania." The Fidelity National bank was to remit balances at certain periods. Large amounts were sent to the Fidelity National bank for collection and it, in turn, forwarded them to other banks for collection. Finally, the Fidelity National failed. Some of these checks had been collected, some were in the hands of other banks, and some had been collected by other banks and the Fidelity National bank given credit by such banks on debts due from the Fidelity National

bank to them. In this case it was held, that so far as the uncollected checks and drafts were concerned, the Fidelity National, and the other banks to which they had been forwarded for collection, were the agents of the Commercial National of Pennsylvania, and that the plaintiff was entitled to recover the specific drafts, or the proceeds thereof; but in speaking of the checks and drafts that had been collected by the banks to which they had been forwarded by the Fidelity National, and the proceeds thereof applied to indebtedness due from the Fidelity National to them, Brewer, J., speaking for the court, said:

"We also agree with the circuit court, in its conclusions as to these moneys collected by sub-agents to whom the Fidelity was in debt, and which collections had been credited by the sub-agents upon the debts of the Fidelity to them before its insolvency was disclosed, for there the moneys had practically passed into the hands of the Fidelity, the collection had been fully completed. It was not a mere matter of book-keeping between the Fidelity and its agents; it was the same as though the money had actually reached the vaults of the Fidelity. It was a completed transaction between it and its sub agents, and nothing was left but a settlement between the Fidelity and the principal—the plaintiff."

It will be seen from this case, that even though a check is endorsed, "for collection and credit," and forwarded to a receiving bank, which then forwards it to another bank, which collects the check and applies the proceeds upon an indebtedness due from the bank to which it was first sent to the bank collecting the check, an action will not lie by the bank owning the check against the bank which collects and applies the proceeds thereof on a debt

due it from the bank which forwarded the check to such collecting bank.

The question presented in this case is not as to whether the plaintiff was the real owner of the check, but what are her rights as against the Winfield National bank, who received the check from the Farmers and Merchants bank, with only a general endorsement thereon. It is admitted by the parties to this action that when this check was received by the Winfield National bank, that it immediately gave the Farmers and Merchants bank credit therefor, and that the Farmers and Merchants bank had a right to check against this credit, which it subsequently, and before its failure, did. We have carefully examined many authorities bearing upon the questions presented in this case, but we have failed to find any authority which holds that, under the facts presented by the record in this case, the defendant in error is entitled to recover.

The supreme court of Maryland, in the case of *Ditch v. The Western National Bank of Baltimore,* 79 Md. Rep. 192; 47 Am. St. Rep. 375, says:

"If one deposits a check payable to his order endorsed 'for deposit to the credit of' the payee, and which is credited to him by the bank as cash, and the bank endorses it 'for deposit,' to its own credit, and transfers it to another bank, which credits it *bona fide* as cash, and pays the former bank, which afterwards assigns for the benefit of creditors, the title to the check is vested in the latter bank."

The following authorities support the above rule, or contain statements throwing some light upon the question: *Wasson v. Lamm,* 120 Ind. 514; 16 Am. St. Rep.

342; *Metropolitan National Bank v. Loyd*, 90 N. Y. 35; *Cragie v. Hadley*, 99 N. Y. 131; *Odey v. National City Bank*, 45· N. Y. 735; *City National Bank v. Burns*, (Alabama) 44 Am. Rep. 138; *National Bank v. Berkhart*, 100 U. S. 686; *St. Louis, etc., Ry. Co. v. Johnson*, 27 Fed. Rep. 243; *American Exchange National Bank v. Gregg*, 138 Ill. 596; 32 Am. St. Rep. 171; *In re State Bank*, 56 Minn. 119; 45 Am. St. Rep. 454; *Hoffman v. First National Bank*, 46 N. J. Law, 604.

And this rule is not limited to cases where checks are drawn upon the same bank which credits them as cash.

Notwithstanding the foregoing authorities, we do not wish to be understood as laying down the rule that the mere crediting the Farmers and Merchants bank with the amount of the check in controversy necessarily passed the title to the Winfield National bank, as against the defendant in error. We are of the opinion, that even though the Farmers and Merchants bank were credited on the books of the Winfield National with the amount of the check, the defendant in error is entitled to recover the check, or the proceeds thereof, the same having been collected after the failure of the Farmers and Merchants bank, unless the Winfield National parted with a present consideration without any knowledge as to who was the true owner of the check, or suffered balances due it from the Farmers and Merchants bank to remain unpaid, and the check either wholly or partially influenced the extension of payment. (*Wilson v. Smith*, 3 Howard, [U. S.] 763.)

But if either was done by the defendant, then the fact that the check was not collected until after the

failure of the Farmers and Merchants bank is immaterial, because, under such state of facts, it is an innocent holder for value.

This view is supported by Morse on Banks and Banking, vol. 2, sec. 591, p. 931:

"The general rule of law is, that if a person employs an agent to collect money under such circumstances that the agent naturally employs a sub-agent to accomplish the actual collection, then the principal will be entitled to sue the sub-agent and collect the money directly from him without regard to the relationship or condition of accounts existing between such agent and sub-agent, and although the sub-agent had no knowledge that his employer was an agent, and not a principal. But if the owner has delivered the paper to the agent with no *indicia* whatsoever to show that such agent is not the owner, and the sub-agent receives it from the agent supposing him to be the owner, and gives him credit upon the strength thereof, then the principal cannot recover from the sub-agent."

And again on page 933:

"Where a negotiable instrument, indorsed and delivered in blank to a bank, though in fact only for collection, is sent by it to another bank for 'collection and credit' before maturity, and the latter receives it without notice that it does not belong to the former it may lawfully retain the proceeds of the collection to satisfy a claim for a general balance against the other bank, if that balance has been allowed to arise and remain on the faith of receiving payments from such collections pursuant to a usage between the two banks."

As to whether or not the title to a check or draft, on which there is an unrestricted endorsement has passed to the bank under a disputed state of facts, is a question for the jury under proper instructions from

the court; and the test is, has the bank, in good faith, parted with value, or on account of the check or draft extended payment of an existing indebtedness. Of course, when the facts are admitted, the question then is purely one of law. But in all such cases, it should be the object of courts and juries to ascertain the true intent of the parties.

The error in instruction number 4 was not cured by any other instruction. The court apparently failed to distinguish between a check endorsed in blank and one endorsed "for collection."

By section 3212, of the Statutes of Oklahoma 1893, it is provided: "A banker has a general lien, dependent on possession, for all that is due to him as such, upon all articles of commercial value that are intrusted to him by the same principal."

But this section only gives a banker a lien on the property belonging to the customer of the bank, which is in the bank's possession. If the property is not, in fact, the property of the customer, then the bank has no lien, unless it received it for value, or by reason thereof extended payment on an existing debt.

The court also instructed the jury:

"You are instructed that in an action against a party to whom such check, or the proceeds thereof, may come in the usual course of business, and who claims to have taken the same in good faith and for value, and without notice of the ownership of such check, or of the insolvent condition of the bank from which it is received, the burden is upon such party to establish the truth of such claims by a preponderance of the evidence."

This instruction cast the burden upon the Winfield National bank to establish that it received the check in good faith, for value, in the first instance.    We cannot agree with this rule.

The holder of a check endorsed in blank, in law, is presumed to be the legal holder for value, and that it was endorsed to him before maturity; and in this case the burden was upon the plaintiff below, to establish that she was the real owner of the check, and, although endorsed in blank, was only in fact deposited with the Farmers and Merchants bank for collection.   Once these facts are established, then the bank should show by a preponderance of the evidence that it received the check in good faith, for value, or had permitted an existing indebtedness to remain unpaid.   (*Ealon v. Harlan et al.*, 20 Kans. 452; *Rahen v. King Wrought Iron Bridge Mfg. Co.*, 16 Kan. 530; *Brook v. Teague*, 34 Pac. 347; 52 Kan. 119; *Mann v. Second National Bank*, 10 Pac. 150; 34 Kan. 746.)

One other point is urged by plaintiff in error which is worthy of consideration, and that is that the jury failed to properly answer interrogatories submitted to them.    This point is also well taken.    The jury, in every answer, seems to have tried to frame their answers so that they would be favorable to the defendant in error, regardless of whether the evidence warranted it or not. The jury may have acted in good faith and with the best of motives, but some of the answers are not justified, and others evade the question asked.   The plaintiff was entitled to have every proper question asked, answered by a direct answer, if the jury could agree, and if they could not agree, no answer should be given.

For the reasons stated herein, we are of the opinion that the judgment of the district court should be reversed and set aside, a new trial granted, and the case remanded to the lower court, at the cost of the defendant in error, with direction to proceed in conformity with the views expressed in this opinion. It is so ordered by the court.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.