SEYMOUR S. PRICE AND LETA J. PRICE V. THE WINNEBAGO
NATIONAL BANK.

(Filed September 1, 1904.)

1. WRITTEN INSTRUMENT—Fraud—No Defense, When. This court will not enforce a defense of fraud to set aside a written instrument, when the party making such defense is shown to be the principal party in perpetrating the fraud,. and where the proof is doubtful as to the other party having knowledge of such fraud. In such case, the rule that he who seeks equity must come with clean hands, will be enforced.

2. NEGOTIABLE INSTRUMENT—Evidence of Title. The mere possession of a negotiable instrument payable to order, and properly endorsed, is prima facie evidence that the holder is the owner thereof; that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstances that would impeach its validity, and that he is entitled to recover upon it the full face value as against any of the antecedent parties; and where the maker of such an instrument so endorsed and held, claims that the holder of the instrument is not the holder for value, it devolves upon the maker to prove the same.

3. FRAUD—Evidence of. The rule is, if the person against whom fraud is alleged should be proven to have been guilty of it in any number of instances, still if the particular act sought to be avoided be not shown to be tainted with fraud, it cannot be affected with the other frauds, unless in some way or other it be connected with or form part of them.

4. COMPOSITION WITH CREDITORS. It is a well recognized rule in composition that the debtor and creditors must agree upon a basis of settlement. The rule cutting off underhand agreements in cases of joint and general compositions, as a fraud upon the other compounding creditors, and because such agreements are subversive of sound morals and public policy, has no application to a case where each creditor acts not only for himself, but in opposition to every other creditor; all equally relying on their vigilance to gain priority, which, if obtained, each being entitled to have satisfaction, cannot be questioned.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Jas. L. Brown* and *J. W. Johnson,* for plaintiffs in error.

*R. G. Hays* and *Selwyn Douglass,* for defendant in error.

### STATEMENT OF FACTS.

On the 16th day of October, 1900, the defendant in error, Winnebago National Bank, filed its petition in the district court of Oklahoma county, Oklahoma Territory, against the plaintiffs in error, Seymour S. Price and Leta J. Price, asking a judgment against the said plaintiffs in error, for the sum of one thousand eighty-five dollars, ($1085.00), with interest thereon at the rate of eight per cent per annum from the 19th day of August, 1900, on a certain promissory note executed by said plaintiffs in error, payable to the order of J. D. White, trustee, for said amount, (a copy of the note is set out in said petition) and also asking the foreclosure of a certain mortgage deed executed by the plaintiffs in error to J. D. White, trustee, to secure the payment of said note, said mortgage deed being on the following described property: lot thirty-one (31), in block five (5), in the city of Oklahoma, Oklahoma county, Territory of Oklahoma. Said note contained the following endorsement on the back thereof: "Pay to the order of the Emerson Manufacturing Company, J. D. White, trustee. Pay Winnebago Bank, Emerson Manufacturing Company, C. D. Braitingham, sec."

On February 4th, 1901, the plaintiffs in error filed their answer, as follows: First, denial of signature, and execution of note and mortgage; denying assignment before ma-

.turity. Second, that one of the signers, Seymour S. Price, was mentally incapacitated from signing the note and mortgage. Third, want of consideration. Fourth, note and mortgage was given as collateral security for debt of Farmers Hardware & Implement Company. To this answer a reply of general denial was filed.

Afterwards, on the 25th day of May, 1903, leave having been obtained, plaintiffs in error filed their amended answer. The first ground of defense in the amended answer was payment of the note, by note of one Carroll C. Marsh, to H. G. Baird, which was by plaintiff collected and applied to the payment of the note in suit here. Second defense: Note was given as composition with creditors, while debtor was insolvent, and in fraud of other creditors, and therefore invalid.

To this amended answer a reply of general denial was filed. The plaintiff introduced its note and mortgage regularly and duly endorsed; also introduced the evidence of Mr. Feller, and Mr. McMechan, as to certain erasures that appeared on the face of the note and mortgage, after which, the note and mortgage was admitted by the court. Defendants then, over the objection of plaintiff, were permitted to cross-examine plaintiff's witnesses, and introduced evidence in their behalf showing the circumstances surrounding the execution of the note and mortgage, and the consideration thereof. From such evidence, it appears in substance, that the Farmers Hardware & Implement Company was organized as a corporation with a capital stock of ten thousand ($10,000.00) dollars; that Seymour S. Price was one of the directors and chief stockholders and president of this cor-

poration. That they became indebted to divers and sundry persons to the amount of about eighteen thousand five hundred ($18,500.00) dollars, or eight, thousand five hundred ($8,500.00) dollars in excess of the amount of their capital stock, and that such indebtedness was created while Price and one Baird were directors of the said corporation. That among the creditors to whom they were·indebted were the Newton Wagon Company, The Grand Detour Plow Company, and the Emerson Manufacturing Company. The total amount of the indebtedness to these three companies at the time of the execution of the note and mortgage, was four thousand, two hundred fifty-six and 71-100 ($4,256.71) dollars.

That the Standard Implement Company was a corporation organized by these three corporations, with its headquarters at Kansas City, Missouri, and acted as the sales and collection agent of the three corporations. That Mr. Feller, of the firm of Karnes, New, Hall & Krauthoff, attorneys at law, at Kansas City, Mo., came to Oklahoma for the purpose of adjusting these three claims. That other creditors had brought suit in the district court of Oklahoma county, Territory of Oklahoma, against the Farmers Hardware & Implement Company, to collect claims and had had a receiver appointed for the assets of the Farmers Hardware & Implement Company. Feller, representing the three companies named, instituted proceedings in bankruptcy against the Farmers Hardware & Implement Company, in the United States court at Arapahoe, Oklahoma Territory, and was seeking to make Price and the other directors responsible individually for the debt of the corporation under

general section 958, page 233, of the Statutes of Oklahoma, 1893, for creating debts beyond their subscribed capital stock. At this juncture, Mr. Price, one of the plaintiffs in error, entered into a contract with one J. H. Wheeler, president of the Bank of Commerce, of Oklahoma City, whereby Wheeler was to furnish the money for the purpose of buying up the claims, a list of which claims was furnished by Price, and attached to the contract. Among these claims, were The Emerson Manufacturing Company, of Rockford, Illinois, $1,089.00; The Newton Wagon Company, Batavia, Illinois, $1,077.00; The Grand Detour Plow Company, Dixon, Illinois, $2,104.00, and The Standard Implement Company, Kansas City, Mo., $1,023.00, making a total amount of $5,293.00.

It was also further agreed between Price and Wheeler, that Price was to assist Wheeler in purchasing all of the claims against the Farmers Hardware & Implement Company then outstanding, for a sum not to exceed sixty per cent thereof. It was further shown by the evidence that in order to get the money from the bank it was agreed that Feller assign the $4,256.71, the amount of his claim, to Welch, and receive $2,518.30; that in order to procure more cash to pay on these claims, Price executed a note signed by the Farmers Hardware & Implement Company, to the Standard Implement Company, for $1,089.90, and transferred that to Welch, receiving thereon $653.41, which was applied, and this made the cash payment $3,171.71, leaving a balance due of $1,085.00 for which this note and mortgage were given, making in all $4,256.71, the exact amount of the original claims represented by Feller. It was further agreed

between said Wheeler, and said Price that Wheeler was to pay to said Price all of the profits arising from the discounting of said claims, after deducting from said profits $750.00, which was to be in full for the services of said Wheeler, and for his investments, and that all of the remaining profits on said transactions and discounts should go to the said Price for his services, and other considerations and agreements made by him herein.

After hearing all the evidence in the case, the court found the issues in favor of the plaintiff, and rendered judgment in favor of the plaintiff for the principal sum of $1,085.00, with interest thereon from the 19th day of August, 1900, and a decree of foreclosure of the mortgage deed. To all of which defendant excepted, motion for rehearing having been overruled, and exceptions saved, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: As all of the defenses set up in defendant's answer were questions of fact, with the exception of two, and as the court has decided adversely to the defendant in the court below, plaintiffs in error here, and as the evidence reasonably tends to support such finding, this court will only direct its attention to the two defenses which involve questions of law.

First: That the note and mortgage was obtained by fraud. The note and mortgage appear to be perfectly regular on their face. The note seems to have been properly and regularly endorsed before maturity, and we take the rule to be well established that the mere possession of a negotiable instrument, payable to order, and properly en-

dorsed, is *prima facie* evidence, first, that the holder is the owner thereof; second, that he acquired the same in good faith for full value in the usual course of business, before maturity, and without notice of any circumstances that would impeach its validity; third, that he is entitled to recover upon it full face value as against any of the antecedent parties; and fourth, where the maker of such an instrument so endorsed and held claims that the holder of the instrument is not the holder for value, it devolves upon the maker to prove the same.    (*Mann v. National Bank,* 34 Kan. 746.)

Now the claims sought to be discounted by the agreement between the plaintiff in error Price, and Wheeler, as shown by the agreement and evidence, were claims which under the laws of this Territory, plaintiff in error would be personally liable for.    Section 958, page 233, Statutes of Oklahoma, 1893, reads as follows:

"The directors of corporations must not make dividends except from the surplus profit arising from the business thereof, nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock; nor must they create debts beyond their subscribed capital stock, or reduce or increase their capital stock, except as specially provided by law.   For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen), are, in their individual and private capacity, jointly and severally liable to the corporation, and to the creditors thereof."

Under this section, not only the Farmers Hardware &

Implement Company was liable for these debts, but Price, as one of the directors, was responsible, because of the contracting of debts in excess of the amount of the subscribed capital stock, and the settlement of this liability is an adequate consideration for the execution of the note and mortgage. Now if any fraud was perpetrated in the payment or discounting of these claims, or in the manner of raising the funds therefor, or if there was any fraud connected with the signing and execution of the note and mortgage in question, it certainly seems to us that the plaintiff in error, Seymour S. Price, was the prime mover in that fraud, and the person who sought to obtain the benefit thereof. We have searched this record in vain to find any evidence that tends to connect the defendant in error, Winnebago National Bank, with any such fraud. They hold this note properly endorsed, and under the doctrine laid down by the Kansas supreme court, were entitled to all the presumptions in favor of its validity, and entitled to recover its full face value against any of the antecedent parties. Counsel for plaintiffs in error claims that bogus or padded claims were put through and paid under this agreement, and that the job was done by Feller and McMechan without the knowledge or consent of Price, the plaintiff in error. This does not entirely agree with the statement made by the same counsel in his original brief on page three, in which he says "this was arranged between Seymour S. Price and Feller, and is clearly and indisputably shown by the evidence. Feller was to present this bogus note, which was wholly without consideration, to Welch as genuine, and as representing a debt really owed by the Weatherford Company." Now, when we

take this statement of counsel, together with the language of that agreement offered in evidence and marked "Exhibit 1", between Wheeler and the plaintiff in error, Price, and signed by Price, wherein it is provided that Price shall furnish a list showing the names and amounts of creditors; that Price shall negotiate the discounting of the claims; that Price shall take the profits, less the amount of compensation which Wheeler is to receive for his trouble and his investment; where it is provided that all accounting for claims so discounted, and the profits arising from the discounts thereof, must be made to Price, and that Price was to receive the profits of all such discounts, it would hardly seem reasonable to us that if bogus claims were put through or paid, were presented to and discounted by Wheeler in this transaction, that it could be done under such circumstances without the knowledge and consent of Price. In fact, in his answer, or in that portion of his answer which applies to the signing and execution of this note and mortgage, his only claim is, that he was, on account of sickness, in that mental condition that he did not understand the nature or character of the business, and consequently was not accountable therefor. But this question was squarely raised by the pleadings and presented to the trial court, and was purely a question of fact upon which the trial court passed, and its decision was adverse to plaintiff in error; and the record disclosing that there is evidence which reasonably tends to support that finding of the court, such finding is conclusive upon this court.

The next question which partakes in any degree of a legal proposition, is that portion of the answer which alleges

that the note and mortgage was given as a composition by certain creditors in fraud of the rights of other creditors when the debtor was insolvent, and consequently was illegal. There is not, in the record, so far as we can find, any evidence which tends to show that the plaintiff in the court below, Winnebago National Bank, had any knowledge of what the transactions between Feller and Price were. Neither is there any evidence tending to show that Feller ever acted as the agent of the Winnebago National Bank. If we concede, for the sake of argument, that if fraud be shown in the inception of the note, then it devolves upon the holder to show that he obtained the note for full value, and without knowledge of the fraud, we are still at a loss to know how such concession could in any way benefit the plaintiffs in error, as we fail to see where the record discloses anything in the transactions that shows any fraud in the inception of this note. The note was given for the balance due upon three accounts due from the Farmers Hardware & Implement Company, for which Price, the signer of the note, was individually liable. But it is claimed by the plaintiffs in error that there was fraud in Price procuring the $653.41, in cash from the bank to make a part of the cash payment upon this indebtedness. The cash payment had nothing whatever to do with the consideration of this note. Feller and Price may have connived and fraudulently concocted the scheme in relation to getting the $653.41 with which to make the cash payment, but if so, that was a separate transaction, and could not affect this note, as the note was given as an obligation of liability and indebtedness due from the Farmers Hardware & Implement Company, on which

Seymour S. Price was personally liable, for goods sold and delivered to the Farmers Hardware & Implement Company, and·no fraud is alleged in that account.

The plaintiffs in error further claim that the transaction was illegal from the fact that this was a composition of creditors, and that any agreement whereby one creditor secretly agrees to receive a greater amount than another, and the debtor secretly agrees to pay a greater amount than the other creditors, would be void, but we fail to see how this transaction as shown by the evidence could be considered as a composition with creditors.

In the case of *Goldenberg v. Hoffman,* 7 Hun. 324, the court says:

"If a person who purchases claims against a failing debtor takes an assignment thereof for a valuable consideration paid by himself, so that he is at liberty to enforce it against the debtor, the transaction is one of purchase and sale, wherein the liability of the sale passes from the original creditor to the purchaser, and therefore in such case the debt is not compromised so that the original creditor can complain in that other creditors received more than himself."

It is a well recognized rule in composition that the debtor and creditors must agree upon a basis of settlement. In the case of *Clark v. White,* 12 Pet. 178, it is said:

"The rule cutting off underhand agreements in cases of joint and general compositions, as a fraud upon the other compounding creditors, and because such agreements are subversive of sound morals and public policy, has no application to a case where each creditor acts not only for himself, but in opposition to every other creditor; all equally relying on their vigilance to gain priority, which, if obtained, each being entitled to have satisfaction, cannot be questioned."

Now this record fails to show a scintilla of evidence that Mr. Feller or any of the creditors that he represented, ever had any agreement with any other creditors or with the Farmers Hardware & Implement Company for a basis of settlement of the affairs of that company at sixty cents on the dollar, and none of the elements of composition enter in the transaction; and the case of *Pettyjohn v. Wheeler,* 76 Pac. 117, decided by this court, has no application to the circumstances of this case. It is not one which deserves a favorable consideration, for the reason that it is apparent from the record that this case is one in which the party who seeks a reversal of the judgment of the court below was the one who started out to engage in sharp practice; who undertook in an underhand way to make capital of the financial embarrassments of a corporation of which he was not only the president, and chief stockholder, but principal director. It is apparent from an examination of the contract and agreement signed by Price, with Wheeler, that it was a scheme on his part to make money out of the financial embarrasssments of the Farmers Hardware & Implement Company, by buying up the claims against said company at a discount, and then expecting to receive full face value therefor. It does not appeal to us as an honest transaction. If this were a fair *bona fide* attempt on the part of Price to liquidate the debts of the Farmers Hardware & Implement Company, he would not be reserving in that contract the right to individually and personally receive all the profits derived from a discounting of these debts, which seems to be the principle of that contract. It is an instance of a person starting out shearing, and if he comes back shorn,

he has no one to blame but himself. If the scheme of Price to buy up all the claims of the Farmers Hardware & Implement Company at sixty cents on the dollar, and then have them paid off to him at one hundred cents on the dollar, had been successful, in our judgment, there never would have been any claim made that this note and mortgage was not genuine, or that it was obtained through fraud, for the profits derived from this dishonest transaction of his would have fully paid off the note and mortgage, and left a handsome profit. It does not appeal to our sense of justice that a failing debtor has the right to speculate and make profit of his financial embarrassments. It certainly does not have an honest look. It is another illustration of the truth spoken by Burns, when he said:

"The best laid schemes o' mice and men
Gang aft agley."

After a full examination of the record, we are satisfied that a fair trial has been had, and that substantial justice has been done. The judgment of the district court is affirmed at the costs of the plaintiffs in error.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.