GILLESPIE *et al.* v. FIRST NATIONAL BANK OF KINGFISHER.

No. 1976, Okla. T.   Opinion Filed April 14, 1908.

(95 Pac. 220.)

1. **BILLS AND NOTES—Note as Evidence.** The plaintiff in an action upon a negotiable promissory note by introducing in evidence the note and indorsement of the payee thereon in blank prima facie establishes his case.

2. **EVIDENCE—Statements of Agent—Res Gestae.** Statements made by the cashier of a bank in conversations with one of the makers of a promissory note made 18 months and 4 years after the assignment of the note to the bank and after suit had been instituted thereon as to how the bank held the note are not admissible as part of the **res gestae** when it is not shown that the cashier acted for the bank in the transaction by which the note was assigned to it, and when there was no transaction pending at the time of the conversations.

3. **ABATEMENT—Death of Joint Defendant—Judgment Against Others.** When, in an action upon a joint and several promissory note against the makers thereof, it is developed by the evidence, during the trial, that one of the defendants has died since the action was filed and service had, the action abates only as to the deceased defendant, and, upon verdict returned against all the defendants, the court may render judgment against the surviving defendants.

(Syllabus by the Court.)

*Error from District Court, Blaine County; before M. C. Garber, Judge.*

Action on promissory note by the First National Bank of Kingfisher against Ed Gillespie and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Woolman & Ferguson,* for plaintiffs in error.
*Matthew John Kane,* for defendant in error.

HAYES, J.   This action was begun in the district court of Blaine county, on the 8th day of September, 1903, by the First

National Bank of Kingfisher, as plaintiff, against Ed. Gillespie, Charles Hatje, Geo. C. Boland, and A. A. McGregor, as defendants. The action is on a promissory note alleged by plaintiff in its complaint to have been executed by defendants on January 2, 1902, for the sum of $1,000, payable on or before June 1, 1902, to the order of E. J. Kelly. Plaintiff alleges that it became the owner of said note for a valuable consideration before maturity; that said note was assigned to it by E. J. Kelly without recourse.

Defendants in their answer to the plaintiff's complaint make a general denial of each and all the allegations thereof except such as are admitted by them in their answer. They admit that they signed and delivered the note to E. J. Kelly, and say that the consideration for the same was a contract or agreement by and between them and E. J. Kelly to the effect that E. J. Kelly represented to them that he had full power and authority to sell to them the right to locate townsites on the Enid & Anadarko Railway between Geary, Okla., and Anadarko, Okla., and that he would convey to the defendants the necessary information as to where said townsites were to be located and give them complete and exclusive control over the same and convey such information to them that they might proceed to purchase lands at such places as might be designated for towns and that in consideration of said agreement they, in addition to executing to E. J. Kelly the note sued upon, agreed to pay him 25 per cent, of the net profits of the sales of property for said townsites. They allege that E. J. Kelly failed to carry out his contract with them, and did not notify them of the location of the towns as agreed, but that he proceeded to locate said towns himself and sell the same and appropriate the proceeds thereof. They further specifically deny that the plaintiff is the owner of the note for value, and allege that it is using its name in said proceeding for and on behalf of E. J. Kelly, and they further allege that plaintiff claims that it is holding said note as collateral security to secure another note for the sum of $2,500 executed to plaintiff by Kelly Bros., a partnership of which E. J.

Kelly is a member, and allege that the plaintiff had formerly held other securities to secure the payment of said $2,500 note of Kelly Bros., and that a portion of the other securities had been surrendered by plaintiff without notice to or consent of the defendants; that if the plaintiff had retained all the securities they would have been sufficient to have fully paid said note of $2,500, and that by surrendering said securities without the consent of defendants or notice to them they have been damaged.

Plaintiff introduced in evidence, without objection by the defendants, the note sued upon, with the indorsement thereon: "Without recourse on me. E. J. Kelly, April 7, 1902." Without introducing further evidence plaintiff rested its case. After the defendants had offered evidence in support of their answer, plaintiff demurred to the same, which was sustained by the court and thereupon moved the court to instruct the jury to return a verdict for the plaintiff which instruction was given, and the jury returned a verdict in favor of the plaintiff for the amount of the note. Defendants make 27 assignments of error in their petition, but in their brief they have discussed only matters involved in three of said assignments of error, and the court will therefore treat the other assignments of error as having been abandoned by them.

The note sued upon was a negotiable instrument. The production in evidence of the note indorsed in blank *prima facie* established its case. 1 Daniel on Negotiable Instruments, par. 812; 8 Cyc. 229; *Winfield Bank v. Bettie McWilliams*, 9 Okla., 493, 60 Pac. 229; *Seymour Price et al. v. Winnebago National Bank*, 14 Okla., 268, 79 Pac. 105. The evidence of defendants establishes that the consideration for which the note was executed by them was substantially as set forth in their answer, but there was neither any allegation by them in their answer nor any proof that plaintiff had notice of such facts before it became the owner of the note, or notice that such consideration had failed in whole or in part. There is no allegation or proof of *mala fides* of plaintiff. There is no evidence that the execution of the note by defendants was illegally

or fraudulently obtained, but the evidence is to the effect that Kelly, the payee in the note, refused to carry out his contract. Proof by defendants that the note was executed without consideration by them, or that the consideration, originally valid, had subsequently failed, was not sufficient to shift the burden of proof upon the plaintiff to show that it was a *bona fide* holder for value. 1 Daniel on Negotiable Instruments, par. 814.

George C. Boland, one of the defendants, testified that he went to plaintiff's place of business on the 24th day of October, 1903, which was after the institution of this suit, to converse with the officers of the bank about the note in controversy. He testified that at the time of this visit George Newer, the cashier of the bank, stated to him that the note sued upon in this action was held by the bank as collateral security to secure the payment of a note for the sum of $2,500, dated the 15th day of September, 1903, signed by E. J. Kelly and his brother, T. B. Kelly. He testified that he visited the bank a second time on the 15th day of January, 1906, and that he again had a conversation with Newer, the cashier of the bank, and he testified that he was permitted by Newer to examine the books of the bank; that he formerly had been an assistant cashier of a bank for five years and was acquainted with the system of bookkeeping in banks. The defendants offered to prove by him what entries he found upon the books of the bank relative to the $2,500 note to secure the payment of which they claimed the note in controversy was assigned to the bank as collateral. They offered to prove by him that the entries on the books of the bank showed that said note had been paid. Upon objection by plaintiff to this testimony, the court refused to permit Boland to testify as to the same. Defendants also offered to prove that Newer, the cashier, stated to Boland at this time that the note for $2,500, dated September 15, 1903, executed by the two Kelly brothers, for the securing of which the note in this action was assigned by E. J. Kelly to the bank had been paid. It is of the action of the court in rejecting all this evidence that plaintiffs in error com-

plain. It is insited by them that this evidence was competent for the purpose of showing that the bank was not the owner for a valuable consideration of the note at the time of the trial. Defendant in error insists that this evidence offered by defendants is the declaration of an agent of plaintiff as to past transactions, and cannot be binding upon plaintiff. It is the theory of plaintiffs in error that such statements were made by the cashier in the transaction of business within the scope of his authority, made at the time of such transaction, and was part of the *res gestae* and competent as evidence. The assignment of the note bears date April 7, 1902, and there being no proof to the contrary it will be presumed that the assignment of the note was made to the bank on that date. 8 Cyc. 232.

The first conversation had between witness Boland and Newer, the cashier of the bank, was had in October, 1903, 18 months after the assignment of the note to plaintiff. His testimony is that at that time he asked the cashier to permit him to see the note which the cashier did, and that he asked him (the cashier) how he held the note, and the answer of the cashier was that it was held as collateral to the $2,500 note, which answer was withdrawn from the jury by the court. His second visit to the bank was in January, 1906, nearly four years after the assignment of the note to the bank, and he offered to testify that in this conversation the cashier told him that the $2,500 note of the two Kelly brothers, for the security of which it is claimed by the defendants the note in controversy was collateral, had been paid. The court excluded this testimony. It is the contention of plaintiffs in error that the same should have been admitted as a part of the *res gestae*. The *res gestae* in this action was the fact of the assignment of the note sued upon by E. J. Kelly to the defendant in error and the nature of such assignment. There is no evidence whatever in the record that this transaction occurred between Kelly and Newer, as cashier of the bank, or that Newer had anything whatever to do with the transaction by which the bank became the assignee

and holder of the note. Declarations and admissions of the officers and agents of a corporation may be proved against the corporation as part of the *res gestae* when the same are made during the agency of such officer or agent making such declarations or admissions, and when the same are in regard to a transaction depending at the very time, but they cannot be admitted if made as a narrative of a past act subsequent to the transaction. Abbott's Trial Evidence, 55; 1 Greenleaf on Evidence, 172; Zane on Banks & Banking, 169. There is no evidence in this case of any transaction pending at the time of the conversations of Boland with Newer. Boland stated that on the first visit to the bank he told Newer his business, and that he wanted to see the note, referring to the note sued upon, but the evidence does not disclose what his business was, and it is the contention of counsel for the plaintiffs in error that the visits of Boland to the bank were for the purpose of seeking an inspection of the instrument upon which suit was brought, as authorized by section 4555 of Wilson's Rev. & Ann. St. 1903. Clearly, then, the transaction, if it can be said to be a transaction at all, between Boland and Newer was not one pertaining to the assignment of the note to the plaintiff, and any statement made by Newer at such time about the transaction that occurred 18 months prior thereto, and in which it is not shown that Newer acted as agent for the bank, cannot be said to be a part of the *res gestae* of the transaction by which the bank became the owner of the note. Entries made upon the books of the bank showing how the note sued upon was held by the bank would have been competent evidence, but it was not competent for Boland to testify as to what entries he saw upon the books at the time he visited the bank when no effort was made to show that the books themselves, which were the best evidence, could not be obtained and offered in evidence.

Our attention has been called to the case of *Bank of Monroe v. Field et al.*, 2 Hill (N. Y.) 445, as supporting the theory of defendants in this case. The facts in that case, which was an action

upon a promissory note made by defendants to the bank, were that one of the defendants was requested by the president of the bank to pay the note in question. The defendant, so requested, called at the bank and explained to the president of the bank that he had paid the note to him. The president of the bank and this defendant made an examination of the books of the bank, and upon such examination, the president of the bank admitted that the note had been paid to him, and that he had accounted to the bank for it. The court held that the admission of the president of the bank was admissible as part of the *res gestae*, but in that case the declarations of the officer were made by him while he was acting in the discharge of his duty in endeavoring to collect the note committed to him for that purpose, and at a time when he had examined the records of his principal and spoke with full knowledge of the facts disclosed by the books of his principal. In the case at bar there was no transaction between the witness Boland and Newer, the cashier of the bank, at the time of the conversations. The interest of the bank in the note sued upon was determined by its contract with Kelly, which had occurred long prior to these conversations. The defendant Boland was seeking information relative to his note, and any information given by the cashier as to how the bank acquired said note, when it is not shown that the transaction by which the bank acquired the note was made by Newer as cashier of the bank, and when it appears that this conversation took place at a time far remote from the time the bank acquired the note, and the statements made by the cashier were no part of the transaction, were no part of the *res gestae*, but were conversations about a past transaction which would not be binding upon the bank. *Franklin Bank v. Steward,* 37 Me. 519; *Goetz v. Bank of Kansas City,* 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515; *First National Bank of Canton v. North,* 6 Dak. 139, 41 N. W. 736, 50 N. W. 621; *Hazleton v. Union National Bank of Columbus,* 32 Wis. 34; *Larue v. St. Anthony & D. Elv. Co.,* 3 S. D. 637, 54 N. W. 806.

*First National Bank of Xenia v. Daniel M. Stewart et al.,* 114 U. S. 224, 5 Sup. Ct. 845, 29 L. Ed. 101, has been cited by the plaintiffs in error as supporting their contention in this case. In that case the declarations of the cashier of the bank, introduced in evidence, were declarations made by him in conversations with the witness at two different times. The second of which consersations occurred some two months after the principal transaction, but the Supreme Court of the United States, in holding that the declarations made in the second conversation were admissible, states that the second conversation was part of a treaty between the witness and the cashier of the bank commenced on the former date some two months prior thereto. The conversations between the cashier of the plaintiff in this case and the defendant Boland were no part of any treaty or dealing between the defendants and the bank. Suit had already been instituted upon the note, and the only purpose of defendant Boland's visits to the bank at the time the conversations occurred, as contended by counsel, was for the purpose of obtaining information as to the records of the bank under the provisions of the statutes. Neither the cashier of the bank nor any of the other officers or agents thereof were called by defendants to establish how the bank became the owner and holder of the note, and there being no evidence in the record to rebut the presumption created by plaintiff's evidence that it was the owner of the note, and that the same had been assigned to it for value before maturity, the court did not err in directing the jury to return a verdict for the plaintiff.

The note sued upon in this case is a joint and several note. During the progress of the trial, it developed that A. A. McGregor, one of the defendants, had died since the institution of the suit. The jury, upon the direction of the court, returned a verdict as to all the defendants. On motion for a new trial, the court overruled the motion, and entered judgment against all the defendants except A. A. McGregor. Plaintiffs in error contend that this action of the court was error; that the plaintiff,

having elected to sue all the defendants jointly, and the action not having been revived as to the defendant A. A. McGregor, the action of the court in directing a verdict against the defendants, not excepting the defendant McGregor, was error which the court could not correct by rendering judgment against all the defendants except A. A. McGregor. This contention is without merit. The death of one of several defendants sued jointly on a contract abates only the action as to him, and the action continues against the surviving defendants. 5 Ency. Plead. & Prac. 837, and the authorities there cited. An order made by the court subsequent to the death of A. A. McGregor, if made before the action had been revived, was, to the extent that it affected him or his estate, void. The court was without jurisdiction to enter judgment against defendant A. A. McGregor, and his action in refusing to do so in no way prejudiced the rights of the other defendants.

The judgment of the lower court is affirmed.

Willaims, C. J., and Dunn and Turner, J. J., concur; Kane, J., disqualified, not sitting.