## OKLAHOMA STATE BANK OF CADDO v. AIRINGTON.

No. 8058—Opinion Filed March 5, 1918.

Rehearing Denied May 7, 1918.

(172 Pac. 462.)

(Syllabus.)

1. **Appeal and Error —Question of Fact — Verdict—Review.**

The verdict of the jury on a disputed question of fact in an action at law, and the judgment of the court thereon, will not be disturbed on appeal, where there is evidence reasonably tending to support the same.

2. **Evidence — Statement of Bank Cashier —Admissibility Against Bank.**

The statements made by the cashier of a banking corporation in response to timely inquiries properly addressed to him by a bank examiner, and relating to matters under his charge and in respect to which it is his duty to give information to the bank examiner, may be given in evidence against the corporation.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by Noah Airington against the Oklahoma State Bank of Caddo, Okla. Judg-

ment for plaintiff, and defendant brings error. Affirmed.

McPherren & Cochran and James S. Summers, for plaintiff in error.

W. F. Semple, for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, for the purpose, of recovering a certain sum which it was alleged was due the plaintiff from the defendant as a depositor of the bank. The defendant, by way of answer, alledged that the balance claimed to be due the plaintiff was withdrawn from his account in due course upon checks of the plaintiff made payable to one McBride, who at that time was the president of the bank, pursuant to an agreement by the terms of which it was agreed that McBride could use this money in his individual capacity and pay the said plaintiff a higher rate of interest than he could get from the bank on a time deposit. The reply of the plaintiff denied that he had any such agreement with McBride. Upon trial to a jury there was a verdict for the plaintiff for the amount claimed to be due, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The record discloses that on a former trial a verdict to the same effect was returned by the jury, which was set aside upon motion for new trial, and a new trial granted; so, as the case now stands, two separate juries have found the facts in favor of the plaintiff, the last finding to that effect being approved by the trial court. The assignments of error relied upon for reversal are stated by counsel for defendant in their brief as follows: (1) That the verdict is not supported by sufficient evidence; (2) error in the admission of incompetent, irrelevant, and immaterial evidence.

On the first proposition it is sufficient to say that we have carefully examined the record and are convinced that there was evidence adduced at the trial reasonably tending to support the verdict of the jury and the judgment of the trial court. This being purely an action at law, the Supreme Court is not at liberty to disturb the verdict of the jury and judgment of the trial court entered thereon, where there is any evidence reasonably tending to support the same.

The next assignment of error relates to error in the admission of the testimony of Mr. Pratt, a state bank examiner, relating to certain admissions made to him by Mr. Marple, the cashier of the bank, with reference to the Airington account. The defense of the bank, as we have seen, was that the balance of his deposit, which the plaintiff claimed remained unpaid, had been withdrawn from the bank by Mr. McBride upon checks drawn by Mr. Airington pursuant to the arrangement between Airington and McBride hereinbefore mentioned. Mr. Marple, on behalf of the bank, testified that the books of the bank showed the Airington account to have been fully checked out; that he balanced Mr. Airington's bank book himself, and filed it, together with all canceled checks, including those payable to McBride, with a lot of other balanced accounts in the vault of the bank; and that he supposed that this bank book, together with the canceled checks, were mailed out to Mr. Airington in due course of business. He says, however:

"I would not swear that it was [mailed to Airington], because 40 or 50 accounts were mailed out at one time, and I did not take the trouble to see whose accounts were mailed out and whose were not."

Mr. Airington testified that he never received from the bank any canceled checks payable to McBride, nor any canceled checks, except certain checks, none of which were payable to McBride, which he exhibited at the trial, and which he contends were the only checks he ever drew on his account. Without charging the McBride checks against Airington, the books showed the balance due him that he claimed. At the time of Mr. Pratt's visit to the bank the Airington account was still unsettled and still in controversy between Mr. Airington and the bank, and the bank examiner was inquiring concerning it as a part of his official duty as a bank examiner. Mr. Pratt testified that he asked Mr. Marple to exhibit the canceled checks payable to McBride, and Mr. Marple answered that they were not in the bank. Whereupon the following questions and answers relating to these checks were allowed:

"Q. State what, if anything, he said to you about not being able to make a statement of the Airington account. A. He said he did not have the canceled vouchers. Q. Where did he say the canceled checks and vouchers were? A. He did not know, but said he thought Mr. McBride had them. Q. State by whom the vouchers were sent to Mr. McBride, if you know. A. I don't know who sent them. Q. What did Mr. Marple say to you at that time with reference to who sent the checks and vouchers to Mr. McBride? A. He said they were

sent to him. Q. What was said, if anything, with reference to Mr. McBride's authority to check or draw on the account of Mr. Airington? A. Mr. Marple stated that he understood that Mr. McBride had authority as to the handling of this account."

As the balance of Mr. Pratt's testimony in relation to the statements made by Marple tended to corroborate defendant's theory of the case, we do not deem it necessary to notice it here, but will confine ourselves to a consideration of the part set out above, which, if inadmissible, probably would be harmful. The contention of counsel for the bank as to the admissibility of this evidence is disclosed by the following statement taken from his brief:

"The statements made by Marple to the bank examiner as to the handling of the Airington account and the whereabouts' of the canceled checks are also inadmissible as admissions of the bank, because these statements were not made within the scope of his authority as cashier of the bank, nor while performing the transaction about which the statements were made."

On this proposition we are unable to agree with counsel. In our opinion the statements made by Marple to the bank examiner were clearly within the scope of his authority; it being the duty of the cashier of the bank to explain its affairs to the bank examiner, particularly when the admission was made concerning a pending transaction between the bank examiner and the cashier of the bank, acting for his principal. The bank examiner, in his official capacity, was endeavoring to straighten out the Airington account, and in pursuance of this duty asked Marple about the canceled checks, which, the bank alleged, were drawn by Airington and made payable to McBride. This was the transaction that was there under consideration and Marple's answers to proper questions of the bank examiner were certainly within the scope of his authority as cashier of the bank. The case at bar is not ruled by the principle announced in Gillespie v. First National Bank, 20 Okla. 768, 95 Pac. 220. In that case, in an endeavor to support a denial of the claim of the bank that it held the note bona fide, the defendant offered to prove by Boland, one of the defendants, that in two conversations he had with the cashier of the plaintiff bank such cashier made statements which tended to show that the bank was not such holder in due course. In that case Boland was not entitled to the information he sought in relation to a past transaction, and the cashier of the bank, whilst authorized to give such information in a proper case, was not required or authorized to give it to

Boland. In these circumstances, the court very properly excluded the evidence as mere gossip or hearsay. The applicable principle in that case is that, whilst the agent may have authority to transact the business of his principal and make statements in relation thereto while so engaged, after the business is ended he is without authority to gossip about it, and thereby bind his principal. Wigmore on Evidence, 1078; Chamberlayne on Evidence, § 1346. On the other hand, the rule applicable to the situation presented by the record before us is stated in First Nat. Bank of Xenia, Ohio, v. Stewart et al., 114 U. S. 224, 5 Sup. Ct. 845, 29 L. Ed. 101, as follows:

"The declarations made by an officer or agent of a corporation, in response to timely inquiries, properly addressed to him, and relating to matters under his charge, in respect to which he is authorized in the usual course of business to give information, may be given in evidence against the corporation."

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.