**LACY CHEVROLET CO. v. McGINNIS.**

No. 26950.    Oct. 19, 1937.

Goode, Dierker & Goode and Brown Moore, for plaintiff in error.

Bailey E. Bell and Wilcox & Swank, for defendant in error.

OSBORN, C. J. This action was instituted in the district court of Payne county by Sallie McGinnis, hereinafter referred to as plaintiff, against the Lacy Chevrolet Company, a corporation, Charles Sebastian, and James H. Warren, hereinafter referred to as defendants, wherein plaintiff, as the sole heir of Oscar F. McGinnis, deceased, sought to recover damages for the wrongful death of the said Oscar F. McGinnis. The court sustained a demurrer in favor of the defendant Sebastian and the cause was dismissed as to the defendant Warren. The cause was tried to a jury and a verdict was rendered in favor of the plaintiff against the Lacy Chevrolet Company in the sum of $3,000. From a judgment thereon, said company has appealed.

The defendant corporation was engaged in the automobile business at Cushing, Okla., and deceased was employed by said corporation as an automobile salesman. Some time prior to September 8, 1934, he had traded, on behalf of the company, a Chevrolet automobile to one J. H. Warren for a 1½ ton Chevrolet truck and a trailer. The truck had been delivered to the defendant company, but Warren had not delivered the trailer. On the afternoon of September 8, 1934, the deceased, McGinnis, in company with one Ernest Wilson, a young man about 17 years of age, left Cushing to go to the Little Chief oil field near Fairfax Okla., approximately 60 miles from Cushing, for the purpose of procuring the trailer. They experienced some difficulty in locating the trailer and did not leave the town of Fairfax until about midnight. While en route to Cushing it appears that the truck was driven off of the highway and smashed into a concrete embankment at the bottom of a small creek over which the highway crossed. Both occupants were instantly killed.

Plaintiff alleges that deceased and Wilson were directed by the defendant corporation to go to Fairfax to get the trailer; that the truck was driven by Wilson, while acting as the agent, servant, and employee of defendant, at a high, dangerous, and excessive rate of speed and being inexperienced as a truck driver and being too young and incapable of handling the same he "drove the same over a high embankment, jumping a creek a distance of 43 feet and struck a solid concrete embankment, wrecking and demolishing the truck and instantly killing the said Oscar McGinnis."

The acts of negligence charged to the defendant company are as follows:

"Plaintiff further alleges that the defendants knew or should have known by the exercise of ordinary care, that the said Ernest Wilson was not large enough or

capable of handling a truck and trailer of this kind and size and was inexperienced in the handling of trucks and was a fast driver and known to be a fast driver by the defendants, their agents, servants and employees, and was known by them to be a reckless, fast and dangerous driver and said defendants knew or should have known by the exercise of ordinary care that it was dangerous to send this heavy equipment out in the care of Ernest Wilson, and regardless of the consequences thereof, did send the said Ernest Wilson, then only seventeen years of age, to drive and operate said truck and commanded and directed the deceased to accompany him on said journey, all of which was negligence on the part of the defendants.

"Plaintiff further alleges that the defendants sent the said Ernest Wilson and Oscar F. McGinnis on the said long mission very late in the afternoon on the 8th day of September, 1934, and well knew or should have known by the exercise of ordinary care that the trip to be made would require very much of the night following and sent this young, inexperienced, light, reckless driver, just seventeen years of age, in charge of this heavy equipment to drive it this long trip and that so doing was gross negligence on the part of the defendants."

The defendant company by its answer pleaded, among other defenses, that Wilson was not an employee of the company at the time McGinnis was killed: that he did not go on the trip with McGinnis for the company; that he had been paid off by the company prior to the time he went on the trip and was not directed or requested by the company to perform any services for it after he was paid off.

At the close of the plaintiff's evidence, defendant demurred thereto, which demurrer was overruled. After all the evidence was introduced, defendant company moved for a directed verdict, which motion was likewise overruled. It is urged on appeal that the trial court erred in admitting certain evidence offered by plaintiff, which evidence was offered for the purpose of proving that at the time of the fatal accident Ernest Wilson was an employee of the defendant company.

One Walter H. Starns testified in behalf of plaintiff that he operated a filling station in the town of Cushing; that on Saturday afternoon, September 8, 1934, deceased came into his filling station and used the telephone. Witness did not know whom deceased called. Over objection of counsel, the witness testified that he heard deceased say that "he felt bad and didn't feel like driving the truck and he would like to have a driver."

Sallie McGinnis, plaintiff, testified in her own behalf that on Saturday, September 8th, about 1:00 o'clock p. m., deceased called the defendant from their home. Over objection of counsel she testified that she heard his part of the conversation; that when he got his number he said: "I want to talk to Mr. Lacy." The next thing he said was: "If I have got to go after that trailer, you will have to find a driver, I am not feeling well today"; that there was a pause, and deceased said, "I don't want to drive that truck, my hip has been hurting me again." The witness testified, further, that she learned of the fatal accident on Sunday morning about 11 o'clock. That she went to Pawnee with Mr. Sebastian (an employee of defendant company) and Mrs. Leftwich (the mother of Ernest Wilson); that on the way to Pawnee, she had a conversation with Sebastian. Over objection of counsel, witness testified that Sebastian said, "Someone called the used car place Saturday afternoon and asked for someone to drive the truck for Mr. Mac- (McGinnis) to go up to Fairfax after a trailer," and he further said that "I looked for somebody to send and I sent Ernie" (Wilson). The witness testified, further, that when they reached Pawnee she drove to the scene of the accident with Mr. Lacy, the president of defendant company. Over the objection of counsel the witness was permitted to testify as to certain statements made to her by Lacy. We quote from her testimony as follows:

"Q. What did Mr. Lacy say to you in that conversation, tell everything as you remember now, that he said to you and you said to him, in that conversation, in your own way. A. I asked him what had happened and he said that the truck and trailer had been wrecked and both men killed. I asked him who was driving and he said Ernie. And I said, 'Who is Ernie,' and he said, 'Ernest Wilson, a boy who works about the place,' and I says 'What kind of a boy is he,' and he says, 'He is a young boy who has worked for me several times.' and I says. 'I don't know him personally,' and I asked him what was the cause of the accident and he said that he did know the cause. * * * And he told me that previously when this boy had worked for him he had discharged him because he was a rather reckless spendthrift boy, and he said, 'I tried to give him a good talking to, and told him he shouldn't spend the money I was paying him with bootleggers,' and he

said, 'He didn't appreciate me talking to him like that and he got angry and said he would spend his money like he wanted to, and I fired him,' and he said, 'Later he came back to me and apologized like a gentleman for what I told him, and I told him I would take him back on condition that he wouldn't do it any more. * * *' "

The witness further testified:

"In our conversation, Mr. Lacy told me he was out of town when the truck left and that if he had been there he wouldn't have sent the boy as a driver. That Mr. Sebastian sent him. Q. Did he tell you what the boy's duties were at the plant there, the company, in the conversation? A. His statement was that the boy worked about the place. Q. Did he state whether or not the boy was a truck driver? * * * A. He said that Ernest was not usually sent out with the cars. Q. Anything else? A. That he helped about the place on the wash rack and in the paint department."

The witnesses Lacy and Sebastian testified in behalf of defendant and denied making the statements above quoted. It was further shown in behalf of defendant that Ernest Wilson was not a regular employee of the company; that he worked only occasionally and prior to the time he left on the trip which resulted in his death he had been paid in full by the company for the services rendered to them. It was not shown that any part of the duties of his employment consisted of driving trucks; that such work as he did for defendant corporation was around the shop.

It is the contention of plaintiff that the testimony of Mrs. McGinnis regarding conversations had with Sebastian and Lacy were properly admitted as a part of the res gestae.

In the case of Roy, Adm'x, v. St. Louis-S. F. Ry. Co., 153 Okla. 270, 4 P. (2d) 1038, it was said:

"The admissibility of evidence as a part of the res gestae depends largely upon the circumstances of the particular case. But it has been said by this court that the rule is universal that to be admissible as part of the res gestae, statements must be substantially contemporaneous with the transaction; made on the spur of the moment; and induced by the happening of the events concerning which such statements are made and not a narrative statement of what occurred. M., O. & G. Ry. Co. v. Adams, 52 Okla. 559, 153 P. 200, and cases therein cited.

"Generally it may be said that to render statements made by an employee of a corporation admissible as a part of the res gestae, they must appear to be spontaneous and so connected with the main fact under consideration as to illustrate its character or to form, in conjunction with it, one continuous transaction. Coalgate Co. v. Hurst, 25 Okla. 588, 107 P. 657."

In the case of Russell Products Co. v. Bailey, 162 Okla. 212, 19 P. (2d) 601, plaintiff sought to recover damages for personal injuries sustained when she was struck by an automobile driven and owned by one Willie Phillips. In order to sustain a recovery against defendant company plaintiff sought to prove that Willie Phillips at the time of the injury was acting within the scope of his employment by the defendant company and in this connection offered to show that certain employees of the defendant company testified to that effect in a city police court in which Willie Phillips was being tried for violation of a city ordinance. Regarding the admissibility of such evidence, it was said:

" '* * * The rule is stated in 1 Greenleaf on Evidence, sec. 113, and is quoted in Swenson v. Aultman, Miller & Co., 14 Kan. 273, as follows:

" 'It is a general rule that the declarations of an agent in order to bind his principal must not only come within the scope of the agent's authority but they must also be made by the agent while he is transacting his principal's business, and be connected therewith as a part of the res gestae, 1 Greenl. Ev. sec. 113; Story on Agency, secs. 134, 135, 136; Paley on Agency, 256-257; U. S. Express Co. v. Anthony, 5 Kan. 490.'

"The rule has been followed by this court in Maston v. Glen Lumber Co., supra, and Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 P. 333. In that case this court said:

" ' 'Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority.' * * *

"The plaintiff cites Oklahoma State Bank v. Airington, 68 Okla. 160, 172 P. 462. Therein this court pointed out the rule and said:

" ' 'The case at bar is not ruled by the principle announced in Gillespie v. First National Bank, 20 Okla. 768, 95 P. 220. In that case, in an endeavor to support a denial of the claim of the bank that it held the note bona fide, the defendant offered to prove by Boland, one of the defendants,

that in two conversations he had with the cashier of the plaintiff bank such cashier made statements which tended to show that the bank was not such holder in due course. In that case Boland was not entitled to the information he sought in relation to a past transaction, and the cashier of the bank, whilst authorized to give such information in a proper case, was not required or authorized to give it to Boland. In these circumstances, the court very properly excluded the evidence as mere gossip or hearsay. The applicable principle in that case is that, whilst the agent may have authority to transact the business of his principal and make statements in relation thereto while so engaged, after the business is ended he is without authority to gossip about it, and thereby bind his principal.' * * *

"A corporation may not be required to answer for an injury sustained until it is shown that that injury was caused by the act of a servant or agent who was acting at the time within the scope of his authority. The way to prove the scope of an agent's authority is to put witnesses on the stand who know the facts and to require them to testify as to those facts. It is not permissible to put on witnesses to prove statements made by officers and agents of a corporation, which testimony amounts to nothing more than hearsay evidence."

See, also, C., R. I. & P. Ry. Co. v. Foltz, 54 Okla. 556, 154 P. 519; M., O. & G. Ry. Co. v. Adams, 52 Okla. 557, 153 P. 200.

In the light of these authorities, we cannot escape the conclusion that the trial court erred in admitting the evidence of plaintiff regarding statements made to her by Lacy and Sebastian. According to her testimony the statements were made approximately 12 hours after the fatal accident. The element of spontaneity present in every case cited by plaintiff is lacking here. The purported statements were no part of the res gestae and were not made by the officer and employee of the defendant company while engaged in the transaction of the business of the defendant company, and within the scope of their authority.

It is urged by defendant that the court erred in admitting evidence relating to telephone conversations, but it is unnecessary to pass upon that question. Assuming that said evidence was properly admitted, defendant's demurrer to plaintiff's evidence should have been sustained. Plaintiff offered no competent evidence to the effect that Ernest Wilson, while driving the truck in which deceased was killed, was an employee of the defendant company and was acting within the scope of said employment.

The judgment is reversed for a new trial.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ. concur.